Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
317 East Spruce Street
P.O. Box 7051
Missoula, MT 59807
406-721-1435
tim@bechtoldlaw.net

     Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | | |
|---|---|---|
| CHAD BURTON HILL and LOUIZA BISSETTE, | ) | |
| | ) | |
| Plaintiffs, | ) | **COMPLAINT and** |
| | ) | **JURY DEMAND** |
| v. | ) | |
| | ) | |
| DAVID WENDT, PAUL BURT, TED CALDWELL, | ) | |
| FLYING J RANCH, LLP, BEAVERHEAD | ) | |
| COUNTY, and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

1. This is an action for deprivation of civil rights under color of state law

pursuant to 42 U.S.C. § 1983, for negligence, and other wrongful acts. This action

arises out of both federal and state law for damages resulting from the unlawful

conduct of Defendants, including Paul Burt; Ted Caldwell; Flying J Ranch, LLP;

David Wendt; Beaverhead County; and Does 1-10.

**JURISDICTION AND VENUE**

2.  This Court has subject matter jurisdiction over the claims alleged in this Complaint pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983. Jurisdiction for state law claims against all Defendants pursuant to the law of the State of Montana is conferred upon this Court pursuant to 28 U.S.C. § 1367 as such claims form part of the same case or controversy.

3.  Venue is proper in the Butte Division of this Court because the events and conduct complained of here all occurred in Beaverhead County, Montana, which is part of the Butte Division of this Court.

4.  Because Plaintiffs make no allegations against the State of Montana, pursuant to MCA §2-9-301, they are not required to file administrative claims against Beaverhead County prior to filing this action.

**THE PARTIES**

5.  Based on information and belief, Defendants Paul Burt and Ted Caldwell are citizens of the State of Utah who own Flying J Ranch, LLP.

6.  Defendant Flying J Ranch, LLP is a Montana limited liability partnership owned by Paul Burt and Ted Caldwell that owns real property in Beaverhead County, Montana.

7.   Defendant David Wendt is a citizen of the State of Montana and the current Sheriff of Beaverhead County. At all times relevant to the issues set forth in this Complaint Wendt was the Undersheriff of Beaverhead County.

8.   Defendant Beaverhead County is a political subdivision of the State of Montana.

9.   Defendants Does 1-10 are individuals and entities whose true identities and capacities are as yet unknown to Plaintiff and his counsel, despite diligent inquiry and investigation, and who acted herein as described more particularly below in connection with the breaches of duties and/or violations of law alleged here and who in some manner or form not currently discovered or known to Plaintiff may have contributed to or be responsible for the injuries alleged here. The true names and capacities of the Doe Defendants will be substituted as they become known.

## FACTUAL ALLEGATIONS

10. In spring 2019, Plaintiffs Chad Hill and Louiza Bissette lived in the Foxley Minor Subdivision of Beaverhead County at 77 Kezia Lane, Dell, Montana 59724.

11. Chad and Louiza were licensed through the Montana Medical Marijuana Program ("MMP") to grow marijuana at 77 Kezia Lane.

12. Paul Burt and Ted Caldwell, the owners of Flying J Ranch, came onto the Plaintiffs' property without permission with the intention of sorting through Plaintiffs' belongings to find evidence of an illegal marijuana grow operation.

13. In December 2018, Flying J Ranch filed a civil action against Hill on December 4, 2018, for violating their Homeowners Association Agreement by operating a commercial grow facility out of his home.

14. Shortly after Flying J Ranch filed its complaint against Hill, Wendt moved into a home in the subdivision that was owned by Flying J Ranch.

15. Wendt shared this residence with Bill Briggs, in violation of the "one-family residence" provision of the restrictive covenants of the subdivision, with the knowledge and consent of Flying J Ranch.

16. Out of Wendt and Briggs' home, Briggs was running a commercial leather business with the knowledge and consent of Flying J Ranch, in violation of the commercial activity prohibition of the restrictive covenants.

17. In April 2019, Paul Burt falsely informed David Wendt that Hill was running an illegal operation at Kezia Lane and that there were always shady characters with out-of-state license plates coming to Hill's house.

18. Plaintiffs never sold any marijuana out of their home at 77 Kezia Lane as they were only licensed to grow marijuana at that residence, not make sales.

19. In April 2019 Wendt learned that Hill was licensed to grow marijuana at 77 Kezia Lane.

20. Burt informed Wendt that the restrictive covenants of the subdivision prohibited commercial activity and Burt would be bringing legal action against Hill.

21. Wendt continued to investigate Hill for over a year, despite knowing that Hill's commercial grow operation was legal and properly licensed.

22. Flying J Ranch and Hill participated in a settlement conference on September 26, 2019.

23. At the settlement conference a tentative settlement was reached.

24. In their tentative settlement, the parties agreed that Hill would be prohibited from engaging in further commercial activity on his property and that Hill would relocate his licensed marijuana grow operation by June 30, 2020.

25. In reliance on the settlement agreement, Hill bought 215 E. Bailey in Lima, Montana, from Joe Richard on or about October 19, 2019.

26. Hill and Bissette discontinued their grow operation at 77 Kezia Lane, as established in their agreement with the HOA.

27. Hill and Bissette devoted time and financial resources to building a new grow facility at 215 E. Bailey but did not begin growing any plants because they were awaiting approval to operate at the new address.

28. Hill and Bissette continued to reside at 77 Kezia Lane.

29. Flying J Ranch and Hill reached an official agreement on November 1, 2019, which Michael Lilly recorded in his second Mediator's Report to the court.

30. Beginning in January 2020 through April 2020, Hill leased part of 215 E. Bailey to Lee Salmonson.

31. Salmonson lived in an RV on the property, near a Quonset-style hut.

32. Hill and Salmonson had a rental agreement that included Salmonson's permitted use of the hut to grow his personal medical marijuana, which he was licensed to do.

33. While Salmonson rented 215 E. Bailey from Hill, Salmonson kept two vehicles on the property, including his RV, had internet services registered for himself at this address, and was licensed by DPHHS to cultivate eight marijuana plants for personal use at this address.

34. The facts in the previous paragraph were omitted from the Affidavit of Probable Cause filed by the state in support of its motion to file charges against Bissette and Hill.

35. From January 2020 until April 2020 when Salmonson was living at 215 E. Bailey, he plugged his RV into the hut for power, which caused a large increase in energy usage during the winter months.

36. In January 2020 Wendt was monitoring 215 E. Bailey and noticed Hill was frequently parked at the property.

37. Wendt contacted Joe Richard, the previous owner, who informed Wendt that Hill was now the rightful property owner.

38. Wendt alleged that the mere existence of a Quonset hut style building on the property consisted of suspicious activity worthy of further investigation.

39. Without any additional evidence of suspicious activity Wendt spoke with the neighbors surrounding 215 E. Bailey.

40. The neighbors next to 215 E. Bailey, Linda Cochran, Rich Bowman, and Cindy Bowman, all reported strong odors coming from the hut.

41. Wendt continued to monitor Hill for the next several months.

42. On March 19, 2020, months after Hill began complying with the settlement agreement, Flying J Ranch's counsel sent a letter to Hill's attorney informing him that his clients had now rejected the previously agreed-to settlement agreement and were going to pursue enforcement of the covenants.

43. On March 30, 2020, Hill and Caldwell, one of the owners of Flying J Ranch, met and came to another agreement to settle the litigation.

44. On March 30, 2020, Hill told Caldwell that Hill had purchased a building in Lima.

45. In an attempt to have Hill prosecuted, Caldwell informed Wendt that Hill had purchased a property in Lima to use as a commercial grow facility.

46. Wendt contacted an inspector for the Montana MMP, Devin Keller, who informed Wendt that the state had not authorized a grow operation at 215 E. Bailey.

47. Wendt contacted Keller without properly going through dispatch channels, which is required when pursuing information covered under the Health Insurance Portability and Accountability Act (HIPPA).

48. Keller supplied Wendt with information about Hill and Bissette without being provided a proper warrant and volunteered confidential information, in violation of HIPPA.

49. Wendt contacted Vigilante Power Company, which reported a significant increase in power consumption at 215 E. Bailey starting in January 2020.

50. The significant increase in power at 215 E. Bailey coincided with Salmonson moving onto the property and plugging his RV into the hut on the property during the winter months.

51. Wendt claimed that an electrician, Richard Reyes, told Wendt that Reyes had wired grow lights and fans in the hut in early January or late February 2020.

52. Wendt claimed that Reyes reported seeing over fifteen marijuana plants in the hut.

53. Wendt informed the MMP inspector that Reyes had claimed to see over one hundred fifty marijuana plants in the hut.

54. In actuality, Reyes reported to Wendt that he had seen approximately four marijuana plants, which belonged to Salmonson.

55. Reyes did not install grow lights, fans, or other marijuana operation essentials in the hut. He only wired the hut for commercial service.

56. On April 7, 2020, Flying J Ranch's counsel sent Hill's attorney a "Mutual Settlement and Release Agreement" which reduced to writing the parties' settlement agreement reached at their settlement conference on September 26, 2019.

57. On April 13, 2020, Wendt appeared at the Lima town council meeting and informed the mayor and town council that a marijuana grower [Hill] had re-located his operation to Lima.

58. Wendt informed the mayor and town council of Lima that he was waiting for verification from the Montana Medical Marijuana Program that there was not a licensed marijuana grow at the location before conducting a criminal raid on the property.

59. On April 15, 2020, Keller told Wendt that there were currently no licensed marijuana growers at 215 E. Bailey.

60. Keller provided incorrect information, as Salmonson had been granted a license to grow medical marijuana at Hill's property on January 15, 2020.

61. Wendt applied for a search warrant on April 20, 2020, which was granted on the same day.

62. Officers Wendt, Haggard, Bowman, and Stewart executed the search warrant on April 20, 2020.

63. The officers spoke with Lee Salmonson, who was the only person on the property.

64. Salmonson disclosed to the officers that he had four personal marijuana plants growing in the hut on the property.

65. Salmonson disclosed to the officers that he had a valid medical marijuana license and was licensed by DPHHS pursuant to MCA § 50-46-319(1)(b)(i) to cultivate eight medical marijuana plants at his residence at 215 E. Bailey.

66. Salmonson provided the officers with his valid grow license prior to them entering the property.

67. None of the officers who were present at the search conferred with MMP or DPHHS before continuing their search of the property, even though the basis for their search warrant was undermined by Salmonson's valid license.

68. Salmonson told the officers that he had been in Seattle, Washington, for the past month and Hill had tended to Salmonson's plants while Salmonson was in Seattle.

69. All of the officers present during the search claimed they saw a large grow operation in the hut.

70. The only live plants in the hut were the four that Salmonson had previously disclosed.

71. While on the property, one of the officers made a call to Keller to confirm the validity of Salmonson's license.

72. Keller told them Salmonson did have a valid license and a mistake had been made.

73. The officers continued to search the property even after confirmation that Salmonson's license was valid.

74. One of the officers discovered approximately twenty-seven pounds of marijuana in two plastic tote bins.

75. The marijuana that was found in the totes belonged to Lee Salmonson.

76. The marijuana found in the totes was not processed in preparation for sale, it was trimmings from Salmonson's previous plants that he used to make resin for his own personal use.

77. The officers found pieces of mail addressed to Hill and Bessette and "a few personal items" that belonged to Hill and Bessette.

78. On or about April 20, 2020, Hill and Bissette were charged separately with felony criminal production or manufacture of dangerous drugs in violation of MCA §45-9-110; criminal possession with intent to distribute in violation of MCA §45-9-110; and criminal possession of dangerous drugs in violation of MCA §45-9-102.

79. On February 15, 2021, the state offered a deferred prosecution agreement to Bissette in exchange for her giving the state information and testifying against Hill.

80. The state deliberately did not combine the cases upon initial filing to pressure Bissette to testify against her husband, Hill.

81. Bissette refused to testify against Hill.

82. Russell Michaels, the county prosecutor, said in an email to Hill and Bessette's attorney, Jack Morris, that Michaels believed Bissette was less culpable than Hill.

83. Hill and Bissette wished to continue to be represented by Jack Morris because Morris was familiar with the facts of their situation.

84. On or about March 11, 2021, Bissette and Hill filed their respective consents to representation with potential conflict forms with the district court.

85. The state filed a motion to remove Jack Morris from representing Hill and Bessette, which the state district court granted.

86. Bissette and Hill appeared pro se at their respective omnibus hearings on May 27, 2021. Bissette was granted a bench trial and Hill was granted a jury trial.

87. The state then moved the district court to join the cases to be tried together on September 6, 2021.

88. The search warrant to search 215 E. Bailey was granted on the basis that (1) Wendt had spoken to a witness who had seen over fifteen marijuana plants growing in the hut at 215 E. Bailey and had personally installed grow operation equipment; and (2) an investigator for the MMP claimed there were no valid licenses registered at 215 E. Bailey St.

89. The first basis was a false statement made by Wendt and the second basis was an incorrect statement provided illegally by Keller, which was later corrected prior to criminal charges being filed.

90. The criminal cases against Hill and Bessette were both dismissed in the beginning of February 2022.

91. As a result of Defendants' unlawful, wrongful conduct committed with malice and forethought, and their breach of duties, Plaintiffs suffered and will continue to suffer from nervousness, anxiety, shock, embarrassment, depression, hopelessness, harm to reputation, apprehension, loss of wages and earnings, loss of earning capacity, loss of property, and loss of consortium, all of which have caused Plaintiffs to sustain damages in sums to be determined at trial.

## COUNT 1

## 42 U.S.C. § 1983

### Individual Liability Against Defendants Wendt and Does

92. Plaintiffs incorporate all prior paragraphs.

93. At all pertinent times during his investigation of Plaintiffs, Defendant Wendt and Defendant Does acted under color of law, statutes, ordinances, rules, regulations, customs, policies, practices, and/or usages as officers of Defendant Beaverhead County, Montana.

94. At all pertinent times during his investigation of Plaintiffs, Defendant Wendt and Defendant Does acted within the course and scope of their employment as officers of Defendant Beaverhead County, Montana.

95. Defendant Wendt and Defendant Does, while acting under color of law, deprived Plaintiffs of their civil rights under the Fourteenth Amendment for equal protection and due process and under the Fourth Amendment to be free from unreasonable searches, unreasonable seizures, false imprisonment, wrongful conviction, malicious prosecution, and excessive force.

96. The acts and omissions of Defendant Wendt and Defendant Does, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order. The acts and omissions described here were consciously chosen from among various alternatives.

97. Each of Defendant Wendt's and Defendant Does' unlawful acts described here directly and proximately caused or contributed to Plaintiffs' constitutional deprivations, injuries, and damages.

**COUNT 2**

**42 U.S.C. § 1983**

**Entity Liability Against Defendant Beaverhead County**

98. Plaintiffs incorporate all prior paragraphs.

99.  Defendant Beaverhead County established policies, customs, and practices that caused the violation of Plaintiffs' rights under the United States Constitution.

100. The policies, customs, and practices implicitly or explicitly adopted by Defendant Beaverhead County amounted to deliberate indifference to and conscious disregard of Plaintiffs' constitutional rights and ratification of violation of those rights.

101. Defendant Beaverhead County failed to hire, train, supervise, and discipline law enforcement officers employed by it with respect to proper police practices, including lawful search and seizure, and investigating the misconduct of law enforcement officers, resulting in the violation of Plaintiffs' rights under the United States Constitution.

102. These constitutional violations were acts of official governmental policies.

103. The unlawful methods of Defendant Wendt as described above were his established practice in policing in Beaverhead County, and the Sheriff was aware of and condoned these methods. Each of the foregoing acts and/or omissions

described here directly and proximately caused or contributed to Plaintiffs'

constitutional deprivations, injuries, and damages.

## COUNT 3

## VIOLATION OF RIGHTS UNDER THE MONTANA CONSTITUTION

## Defendants Wendt and Does

104. Plaintiffs incorporate all prior paragraphs.

105. Pursuant to the Montana Constitution, *see Dorwart v. Caraway*, 58 P.3d

128 (Mont. 2002), Plaintiffs have the fundamental, inalienable, and self-executing

rights to individual privacy; to be secure in their person, papers, home, and effects

from unreasonable searches and seizures; and not to be deprived of life, liberty, or

property without due process of law.

106. Defendants' acts and omission related to the incident involving Plaintiffs

on April 20, 2020, violated Plaintiffs' constitutional rights.

107. Plaintiffs have the right to seek recourse against those who violate their

constitutional rights.

108. Each of the foregoing acts and/or omissions in this Count directly and

proximately caused or contributed to Plaintiffs' constitutional deprivations,

injuries, and damages, and Plaintiffs are entitled to compensatory damages and

attorneys' fees for Defendants' violations of their state constitutional rights.

**COUNT 4**

**NEGLIGENCE**

**Defendants Wendt and Does**

109. Plaintiffs incorporate all prior paragraphs.

110. At all times pertinent to this Complaint, Defendant Wendt and Defendant Does owed Plaintiffs a duty of reasonable care under state law to act lawfully and protect Plaintiffs' constitutional, statutory, and common law rights.

111. Defendant Wendt's and Defendant Does' conduct as set forth in this Complaint does not comply with the standard of care expected of police officers, and was a negligent violation of Plaintiffs' constitutional, statutory, and common law rights.

112. Defendant Wendt's negligence included negligent use of his authority and performance of his duties as an officer of Beaverhead County; negligent violation of Plaintiffs' constitutional, statutory, and common law rights; and negligent training, supervision and discipline of law enforcement officers under his direction and control.

113. As a direct and proximate result of Defendant Wendt's and Defendant Does' negligence, Plaintiffs suffered constitutional deprivations, injuries, and damages.

## COUNT 5

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

## Defendants Wendt, Caldwell, Flying J, Burt

114. Plaintiffs incorporate all prior paragraphs.

115. Defendants Wendt, Caldwell, Burt, and Flying J's negligent acts and omissions described here caused Plaintiffs to suffer serious or severe emotional distress that no reasonable person would be expected to endure.

116. As a direct and proximate result of Defendants' negligent conduct, Plaintiffs suffered, and continue to suffer, serious and severe emotional distress that was a reasonably foreseeable consequence of these Defendants' negligent acts and omissions entitling Plaintiffs to damages.

## COUNT 6

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## Defendants Wendt, Flying J, Burt, Caldwell

117. Plaintiffs incorporate all prior paragraphs.

118. Defendants Wendt, Burt, Caldwell, and Flying J had the purpose or knowledge that their actions would result in the Plaintiffs suffering from severe emotional distress.

119. Defendants' conduct was both extreme and outrageous and completely surpassed all bounds of societal decency.

120. Defendants' intentional acts and omissions described here directly caused Plaintiffs to suffer serious or severe emotional distress that no reasonable person would be expected to endure and was a reasonably foreseeable consequence of Defendant's intentional acts and omissions, entitling Plaintiffs to damages.

**COUNT 7**

**BREACH OF CONTRACT**

**Defendants Burt, Caldwell, and Flying J**

121. Plaintiffs incorporate all prior paragraphs.

122. Defendants Flying J and Plaintiffs entered into a valid settlement agreement on September 26, 2019, which was reduced to writing on October 25, 2019, and filed in court by the mediator, Michael Lilly, on November 1, 2019, and is an enforceable bilateral contract.

123. The parties agreed on September 26, 2019, that Hill would not engage in further commercial activity at 77 Kezia Lane, he would relocate his licensed medical marijuana grow operation by June 30, 2020, he would not use his barn as a temporary or permanent living space, and that vehicles and trailers would be required to be stored in a screened enclosure.

124. Plaintiffs relied on this settlement agreement to invest in property at 215 E. Bailey in Lima, Montana on October 19, 2019, and to remodel a building on the property to bring it up to code so it could be licensed as a medical marijuana growing facility.

125. On March 19, 2020, Flying J breached the contract by rejecting the agreement that Plaintiffs had acted in reliance on beginning approximately five months prior.

126. As a direct and proximate result of Defendants' breach of contract, Plaintiffs are entitled to damages and attorney's fees.

**COUNT 8**

**Conspiracy**

**Defendants Burt, Wendt, Caldwell**

127. Plaintiffs incorporate all prior paragraphs.

128. Defendants Wendt, Burt, and Caldwell intentionally colluded and conspired to manufacture criminal charges against Plaintiffs and deprive them of their individual rights.

129. To further this intention Caldwell and Burt provided false information to Wendt to initiate a criminal investigation into Plaintiffs' activities.

130. Wendt both manufactured evidence and testimony and also withheld information in order to obtain a search warrant.

131. As a direct and proximate result of Defendants' conspiracy, Plaintiffs were harmed and are entitled to damages and attorney's fees.

## COUNT 9

## Fraud

## Defendant Wendt

132. Plaintiffs incorporate all prior paragraphs.

133. On several occasions, Defendant Wendt represented as true facts that Wendt knew to be false. Wendt claimed that Reyes, the electrician who had hooked up electrical service on the hut at 215 E. Bailey, saw approximately fifteen to twenty marijuana plants, but Reyes had told Wendt that Reyes had seen four plants. Wendt told an MMP Officer that Reyes reported seeing over one hundred fifty mature plants. Wendt knew this information was false but used this false information in an application for a search warrant and represented these falsehood as true. Wendt knew that the judge would rely on this false information to issue a search warrant.

134. On April 15, 2020, Wendt was informed by an MMP Officer that there were no licensed providers or personal use cultivators at 215 E. Bailey. This information

was incorrect, as Lee Salmonson had a valid license to grow eight medical

marijuana plants at 215 E Bailey.

135. However, prior to conducting the search of 215 E. Bailey, Wendt was

aware that Salmonson was a licensed grower and had only four plants on the

property.

136. As a direct and proximate result of Defendant Wendt's fraudulent acts,

Plaintiffs are entitled to damages and attorney's fees.

**COUNT 10**

**Defamation**

**Defendants Burt and Caldwell**

137. Plaintiffs incorporate all prior paragraphs.

138. Defendants Burt and Caldwell purposefully and knowingly misinformed law

enforcement about Plaintiffs' commercial grow operation and presented the grow

operation as illegal when they knew the grow operation was validly licensed in the

state of Montana.

139. Defendants Burt and Caldwell knew that law enforcement would launch an

investigation into Plaintiffs' grow operation, which they knew or should have

known would create undue hardship on Plaintiffs.

140. Defendants' false statements exposed Plaintiffs to public hatred, contempt, or ridicule.

141. As a direct and proximate result of Defendants' defamatory acts, Plaintiffs suffered damages and are entitled to compensatory damages and attorney's fees.

## COUNT 11

### Trespass to Land

### Defendants Burt and Caldwell

142. Plaintiffs incorporate all prior paragraphs.

143. Defendants Burt and Caldwell intentionally and with malice entered upon Plaintiffs' land.

144. Defendants entered Plaintiffs' land without the consent of Plaintiffs or any privilege allowed by law. While trespassing on Plaintiffs' land, Defendants entered into buildings on Plaintiffs' property without Plaintiffs' permission.

145. As a direct and proximate result of Defendant Burt's and Defendant Caldwell's trespass upon Plaintiffs' property, Plaintiffs are entitled to damages and attorney's fees.

### COMPENSATORY DAMAGES

146. As a direct result of Defendants' unlawful conduct, Plaintiffs suffered violations of their constitutional, statutory, and common law rights as set forth above, and are due compensatory damages.

147. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs suffered emotional pain and injuries.

## EXPECTANCY DAMAGES

148. As a direct result of Defendants' unlawful conduct, Plaintiffs suffered loss of income based on transactions and endeavors that were dependent upon the contract.

## PUNITIVE DAMAGES

149. Plaintiffs incorporate all prior paragraphs.

150. Defendants acted knowingly, deliberately, intentionally, fraudulently and maliciously with a callous disregard for Plaintiffs' rights, interests, and well-being.

151. Defendants knowingly and intentionally violated Plaintiffs' constitutional rights.

152. Defendants had knowledge of facts or intentionally disregarded facts that created a high probability of injury to Plaintiffs and (a) deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to the

Plaintiffs and (b) deliberately proceeded to act with indifference to the high probability of injury to the Plaintiffs.

153. Defendants made representations with knowledge of their falsity and concealed material facts with the purpose of depriving Plaintiffs of property or legal rights or otherwise causing injury.

154. Accordingly, Plaintiffs are entitled to punitive and exemplary damages in an amount sufficient to punish Defendants and to serve as a warning to other persons and legal entities similarly situated that conduct of the kind engaged in by Defendants is unacceptable in our society and will not be tolerated.

## ATTORNEY FEES

155. Pursuant to 42 USC § 1988, Plaintiffs are entitled to an award of attorneys' fees, expert fees, and other costs if they prevail on claims asserted under 42 USC § 1983.

156. Plaintiffs are also entitled to recover reasonable attorneys' fees for violations of state constitutional rights under Montana's private attorney general doctrine and as allowed by law and equity.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment as follows:

1.      For compensatory damages in a reasonable amount to compensate Plaintiffs fully for the effect of unlawful and negligent conduct described in this Complaint;

2.      For punitive damages in an amount sufficient to punish Defendants and serve as a warning to other similarly situated persons and entities that such conduct will not be tolerated;

3.      For their attorneys' fees, expert fees, and expenses and costs of suit; and

4.      For such further relief as the Court deems fair and just.

Dated this 26th day of May, 2023.

/s/Timothy M. Bechtold
BECHTOLD LAW FIRM

Attorney for Plaintiffs