IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| CHAD BURTON HILL and LOUISA BISSETTE,<br><br>Plaintiffs,<br><br>vs.<br><br>PAUL BURT, TED CALDWELL, FLYING J RANCH, LLP, BEAVERHEAD COUNTY SHERIFF DAVID WENDT, BEAVERHEAD COUNTY, and DOES 1-10,<br><br>Defendants. | CV 23–34–BU–DWM<br><br>ORDER |

## INTRODUCTION

On June 28, 2023, Chad Burton Hill and Louisa Bissette (collectively "Plaintiffs") filed their First Amended Complaint (the "Complaint") against Paul Burt, Ted Caldwell, Beaverhead County Sherriff David Wendt,[1] Beaverhead County (the "County"), and Does 1-10. (Doc. 4.) Plaintiffs allege nine counts arising under federal and state law. (*See id.* at ¶¶ 100–53.) On September 8, 2023, Burt, Caldwell, and Flying J Ranch, LLP ("Flying J") answered. (Doc. 7.) On

---

[1] Sheriff Wendt is now the Sheriff of Beaverhead County. (Doc. 20 at ¶ 2.) However, "[a]t all times relevant to the issues set forth in this Complaint Wendt was a Sheriff's Deputy of Beaverhead County." (*Id.*) He will be referred to as Sheriff Wendt here to both honor his position and avoid confusion.

1

September 11, 2023, Beaverhead County moved to dismiss the claims against it, (Doc. 8), and Sherriff Wendt did the same the following day, (Doc. 10). On September 12, 2023, Beaverhead County answered. (Doc. 12.) The parties have fully briefed the motions. For the reasons explained below, Sherriff Wendt's motion is denied and the County's motion is granted.

## BACKGROUND

### I.  Factual Background

The facts as alleged in the Complaint are as follows. As of 2018, Plaintiffs were licensed through the Montana Department of Public Health and Human Services to grow marijuana at a location in Dell, Montana, and were contracted to sell marijuana under the name Blue Ribbon Botanicals. (Doc. 4. at ¶¶ 12, 13.) Hill also had a medical marijuana card for personal use, which allowed him to grow a limited number of marijuana plants in his home. (*Id.* at ¶ 11.) In December 2018, Flying J filed a civil action against Hill for allegedly violating his Homeowners Association Agreement by operating the commercial marijuana growing operation. (*Id.* at ¶ 15.) In September 2019, Flying J and Hill settled the dispute, which prohibited Hill from continuing to grow marijuana at the Dell location. (*Id.* at ¶¶ 26–28.) Relying on the agreement, Hill bought 215 E. Bailey, in Lima, Montana, in October 2019 but continued to live in Dell. (*Id.* at ¶¶ 29–30.) Plaintiffs then set about building a "new grow facility" in Lima. (*Id.* at ¶ 33.) They did not grow any

2

plants in Lima though, as the COVID-caused government shutdown slowed Montana's permitting process. (*Id.* ¶¶ 34–35.) In January 2020, Hill entered into a lease agreement with Jim Salmonson. (*Id.* at ¶ 39.) The lease allowed Salmonson to live at the Lima property in his RV and to grow personal medical marijuana plants at that property. (*Id.*) Salmonson also had a state license to grow marijuana for personal medical use. (*Id.*)

Meanwhile, Sheriff Wendt was investigating Plaintiffs and receiving information from Flying J about their marijuana operations. (*See id.* at ¶ 52.) As part of his investigation, Sheriff Wendt contacted the Montana Medical Marijuana Program to inquire about licensing at the Lima property, Vigilante Power Company to inquire about electricity usage at the Lima property, and an electrician who had worked at the Lima property. (*Id.* at ¶¶ 53, 56, 58–59.) While the electrician reported seeing only four marijuana plants and installing outlets and standard ceiling lights at the Lima property, Sheriff Wendt reported to the Montana Medical Marijuana Program that 150 plants were being grown and that the electrician had installed infrastructure commonly used for growing marijuana on a commercial scale. (*Id.* at ¶¶ 58–61.)

Based on information from a Montana Medical Marijuana Program inspector named Devin Keller that there were no licensed medical marijuana growers at the Lima property, Sheriff Wendt applied for and was granted a warrant to search the

3

Lima property on April 20, 2020. (*Id.* at ¶¶ 68–69.) The search warrant was executed on the same day. (*Id.* at ¶ 69.) Upon execution of the warrant, the officers conducting the search encountered Salmonson, who showed them his plants and his medical marijuana license. (*Id.* at ¶¶ 70–74.) Sheriff Wendt confirmed that Salmonson's license was valid with Inspector Keller. (*Id.* at ¶¶ 78–79.) Although the officers reported they "saw a large grow operation" on the property, only Salmonson's four personal marijuana plants were present. (*Id.* at ¶¶ 76–77.) The officers also found roughly 27 pounds of marijuana "trim," which Salmonson owned and was storing for the purpose of making marijuana oil for his personal use. (*Id.* at ¶¶ 81–83.) The officers found a limited number of personal items belonging to Plaintiffs at the Lima property, including a piece of mail addressed to Bissette, a bed, and Hill's coats. (*Id.* at ¶¶ 84, 85.)

Following the search, Plaintiffs were separately and individually charged with felony criminal production or manufacture of dangerous drugs, Mont. Code Ann. § 45-9-110; criminal possession with intent to distribute, Mont. Code Ann. § 45-9-110; and criminal possession of dangerous drugs, Mont. Code Ann. § 45-9-102. (*Id.* at ¶ 86.) In February 2022, the criminal cases against Plaintiffs were dismissed without prejudice. (*Id.* at ¶ 96.)

## II. Procedural Background

Plaintiffs now allege nine counts arising under federal and state law, including six against Wendt and one against the County. The claims against Wendt are: (1) 42 U.S.C. § 1983 (Count I); (2) Violation of Rights Under the Montana Constitution (Count III); (3) Negligence (Count IV); (4) Negligent Infliction of Emotional Distress (Count V); (5) Intentional Infliction of Emotional Distress (Count VI); and (6) Conspiracy (Count VIII). (*See* Doc. 4.) Against the County, Plaintiffs allege only entity liability under § 1983 (Count II). (*Id.* at ¶¶ 107–12.) Both Sheriff Wendt and the County moved to dismiss the claims against them. (Docs. 8, 10.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mandate for pleaders is to allege "only enough facts to state a claim to relief that is plausible on its face" to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "[A] complaint need not pin

plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). "[A] complaint that offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not suffice." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (internal quotation marks omitted and cleaned up). Dismissal is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted). However, a claim cannot be dismissed merely because the facts alleged are unlikely or recovery feels remote. *Twombly*, 550 U.S. at 555–56.

## ANALYSIS

### I. Sheriff Wendt's Motion

Sheriff Wendt moves to dismiss each count alleged against him. (*See* Doc. 8.) He argues that the allegations are barred by the applicable statute of limitations and that even if they are not, Plaintiffs fail to plead sufficient facts related to each individual claim. Plaintiffs argue that the applicable statute of limitations has not run, and even if it has, those limits should be equitably tolled. On the merits, Plaintiffs argue they pleaded sufficient facts to survive a motion to dismiss, focusing on Sheriff Wendt's alleged, years-long vendetta against them.

A.   **Statute of Limitations**

If the statute of limitations has run on Plaintiffs' claims, the charges levied against Sherriff Wendt must be dropped. Sheriff Wendt argues that if he caused any injuries, the harm from those injuries ended on April 20, 2020, when the search warrant was executed. Plaintiffs argue that the injuries did not fully accrue until at the earliest, September 11, 2020, when they were arrested at the earliest, or at the latest February 2022, when the charges against them were dropped. Plaintiffs have the better argument.

   i.   **Section 1983 (Count I)**

Section 1983 claims borrow the forum state's statute of limitations for personally injury actions. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Montana, the statute of limitation for general and personal injury tort actions is three years. Mont. Code Ann. § 27–2–204(1). But "[f]ederal law determines when a cause of action accrues and when the statute of limitations begins to run for a § 1983 claim." *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015). "Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Id.* Thus, accrual occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (internal quotation marks and citations omitted).

7

Here, while Sherriff Wendt is correct that Plaintiffs could have pleaded more clearly, Plaintiffs pleaded sufficient facts for him to at least understand the claims against him. Sheriff Wendt and other Beaverhead County Sherriff's Department Officers executed a law enforcement search of Plaintiffs' Lima property on April 20, 2020. (Doc. 4 at ¶ 69.) On September 11, 2020, Hill and Bissette were charged separately with three felony counts under Montana law. The Complaint does not explicitly allege that Plaintiffs were arrested, however their briefing on this motion does. (*See* Doc. 16 at 9–10.) The charges were dismissed against both Plaintiffs in February 2022. (Doc. 4 at ¶ 96.) The original complaint was filed on May 26, 2023. (Doc. 1.) Plaintiffs suffered harm both during the allegedly improper search of their Lima property and due to the years of criminal prosecution based on eventually dismissed charges. Further, they did not "know or have reason to know of the injury that is the basis of the action," *Belanus*, 796 F.3d at 1025, until the charges were actually brought. Their injury was not complete at least until the charges were filed. Therefore, the three-year statute of limitations period for filing Count I under § 1983 would not have run until September 2024 and is not barred by the applicable statute of limitations.

  ii.  **Other Claims (Claims III, IV, V, VI, VII)**

The crux of Sherriff Wendt's argument for the non-section 1983 claims is functionally the same: his allegedly tortious and harmful actions could not have

8

progressed past April 20, 2020, the day the search was executed on the Lima property. As discussed above, the alleged harm resulting from that search cannot be isolated to that day alone. And, because Montana Code Annotated § 27–2–204 sets forth a three-year statute of limitations for torts of general and personal injury, that period of limitations had not run when Plaintiffs filed their Complaint in May 2024. (*See* Doc. 1.)

### B. Failure to State Claim

#### i. Induvial Liability Under § 1983 (Count I)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Id.*

Plaintiffs allege that "[Sherriff] Wendt, while acting under color of law, deprived Plaintiffs of their civil rights under the Fourteenth Amendment for equal protection and due process and under the Fourth Amendment to be free from

9

unreasonable searches, unreasonable seizures, false imprisonment, wrongful conviction, malicious prosecution, and excessive force." (Doc. 4 at ¶ 103.) Sheriff Wendt argues that the Complaint lacks specificity by not pleading what facts alleged actually apply to his liability under § 1983. Plaintiffs have the better argument.

1. Due Process

Plaintiffs' first allegation in Claim I is that Sherriff Wendt violated their rights under the Due Process Clause of the Fourteenth Amendment. Sheriff Wendt argues that Plaintiffs' claims fail as a matter of law because the only property right at issue in this case involves a deprivation of their ability to run their marijuana operation, which cannot form the basis of federal Due Process claim because there may not be a right under federal law in anything marijuana related. Plaintiffs do not dispute this contention but rather argue that their rights were violated when Sheriff Wendt allegedly exposed them to unwarranted criminal investigation and prosecution. Plaintiffs are ultimately correct.

"To state a claim of deprivation of property without due process of law, a plaintiff must establish that he was deprived of a cognizable property interest." *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1988). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]" *Bd. of*

10

*Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). However, whether that property interest is protected by the Due Process Clause must be determined under federal law. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756–57 (2005). "[F]ederal law does not recognize any right related to the cultivation of marijuana." *Palmer v. Montana Dep't of Health & Hum. Servs.*, 2022 WL 457456, at *3 (D. Mont. Feb. 15, 2022). "[N]o private person can have a cognizable property interest in marijuana, even where the state has decriminalized its possession, cultivation, and/or sale." *Id.*

Here, as a matter of law, Plaintiffs do not have a property right in their medical marijuana business, no matter how legal it was under Montana law. *See id.* However, they do have an interest in being free from a malicious investigation leading to the deprivation of their liberty when they were arrested. The Court need only draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 556 U.S. at 678. By alleging that Sheriff Wendt was engaged in activity that led to their arrest, Plaintiffs have sufficiently pled this claim.

### 2. Unreasonable Search

Next, Plaintiffs argue under Claim I that Sherriff Wendt violated their rights under the Fourth Amendment to be free from unreasonable searches and seizures. Sheriff Wendt argues that even if the search of Plaintiffs' Lima property was improper based on his failure to comply with the Montana Medical Marijuana

11

Program, because that right is not cognizable under federal law, it cannot support this claim. Sheriff Wendt also argues that Plaintiffs merely state the elements of the claim and do not support the allegation with facts. Plaintiffs disagree. As alleged on the face of the Complaint, Plaintiffs have adequately alleged sufficient facts to establish that Sheriff Wendt violated their Fourth Amendment rights.

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. When a plaintiff raises factual allegations including the date of the events in question, the harm the officer exposed him to, and the deprivation of rights, he may have sufficiently alleged his claims. *See Macias v. City of Clovis*, 2014 WL 3895061, at *4 (E.D. Cal. Aug. 4, 2014). As Plaintiffs point out, the Complaint alleges each of those facts. (*See* Doc. 4 at ¶¶ 21, 43, 54, 69, 86, 97–8.) Thus, Plaintiffs have adequately alleged their Fourth Amendment claim for the purpose of surviving Sheriff Wendt's motion to dismiss.

### ii. Violation of the Montana Constitution (Count III)

Plaintiffs' third claim alleges that Sheriff Wendt's "acts and omission related to the incident involving Plaintiffs on April 20, 2020, violated Plaintiffs' constitutional rights." (Doc. 4 at ¶ 114.) They also argue that their right to induvial privacy has been violated. *See Dorwart v. Caraway*, 58 P.3d 128 (Mont. 2002). Sheriff Wendt argues that Plaintiffs have merely pleaded conclusory allegations and fail to allege sufficient facts. The Montana Constitution affords

broader protection against searches and seizures than the federal Fourth Amendment alone. *See State v. Smith*, 501 P.3d 398, 403 (Mont. 2021 (citing *State v. Bullock*, 901 P.2d 61, 75 (Mont. 1995)). Thus, under the above analysis, Plaintiffs have alleged at least a plausible claim.

### iii. Negligence (Count IV)

Next, Plaintiffs allege Sheriff Wendt had a "duty of reasonable care under state law to act lawfully and protect Plaintiffs' constitutional, statutory, and common law rights." (Doc. 4 at ¶ 119.) They allege he breached that duty in the following ways: "use of his authority and performance of his duties as an officer of Beaverhead County; negligent violation of Plaintiffs' constitutional, statutory, and common law rights; and negligent training, supervision and discipline of law enforcement officers under his direction." (Doc. 4 at ¶ 120.) Sheriff Wendt argues that Plaintiffs' allegations are merely conclusory. While that argument has some merit, Plaintiffs have alleged a plausible claim.

The "public duty doctrine" is applied "to cases where the plaintiff claims that an officer breached his duty to protect and preserve the peace." *Bassett v. Lamatia*, 417 P.3d 309, 305–06 (Mont. 2018). Additionally, the Montana Supreme Court has held that "independent of the duty to protect and based on generally applicable principles of negligence, an officer may owe a legal duty to a person injured directly by the officer's affirmative actions." *Bassett*, 417 P.3d at 311.

13

"The public-duty doctrine is therefore inapposite and not relevant when . . . the negligence action is premised upon the existence of a duty other than the duty to protect and preserve the peace." *Bassett v. Lamatia*, 417 P.3d 309, 311 (Mont. 2018).

Here, if only the public duty doctrine, not the officer's general duty, is applicable, Sheriff Wendt is correct that Plaintiffs may not have a claim. However, if the general duty is applicable to Sheriff Wendt's actions, then Plaintiffs have sufficiently stated a claim. Sheriff Wendt does not substantively address which duty applies, rather he focuses on the factual assertions pled. He argues that because Plaintiffs only ascribe the improper search to Sheriff Wendt, rather than the criminal prosecution arising out of that action, Plaintiffs have failed to adequately plead this claim. However, as discussed above, the alleged harm occurring at the search is not cut off from the related criminal prosecution. Thus, Plaintiffs have adequately pled their negligence claim.

    **iv.   Emotional Distress and Conspiracy (Counts V, VI, and VIII)**

Plaintiffs bring intentional and negligent infliction of emotional distress claims and a conspiracy claim. Sheriff Wendt does not substantively address the merits of these claims, focusing instead wholly on the statute of limitations issue. Therefore, these claims survive Sherriff Wendt's motion to dismiss.

## II. Beaverhead County's Motion

Beaverhead County moves to dismiss counts II (entity liability under 42 U.S.C. § 1983), V (negligent infliction of emotional distress), and VI (intentional infliction of emotional distress) of Plaintiffs' First Amended Complaint. (Doc. 10.) The County argues that Plaintiffs neither pleaded sufficient facts nor sufficiently state the elements of the claim. They are correct as to Count II because Plaintiffs failed to plead any facts related to the County's policies and practices.[2]

Plaintiffs allege "Defendant Beaverhead County established policies, customs, and practices that caused the violation of Plaintiffs' rights under the United States Constitution," (Doc. 4 at ¶ 108), and that the standard set out in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), applies. To prevail on a *Monell* claim against the County, Plaintiffs must establish that (1) Sheriff Wendt's actions "amounted to an unconstitutional application of excessive force" and (2) the County's "policy caused the constitutional wrong." *See Lowry v. City of San Diego*, 858 F.3d 1248, 1255 (9th Cir. 2017). The Ninth Circuit recognizes four situations when local government conduct equates to policy: "(1) an official policy; (2) a pervasive custom or practice; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker."

---

[2] Plaintiffs do not allege the County is liable under their claims for infliction of emotional distress (Counts V, VI). Accordingly, the County cannot be dismissed from those claims.

*Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). A local government "may not, however, be sued under a *respondeat superior* theory." *Id.* An "official policy must be the moving force of the constitutional violation in order to establish the liability of a government body under § 1983." *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (internal quotation marks omitted). Accordingly, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Here, Plaintiffs allege no facts to support an official policy existed that led to their injury, that there were any specific failures in Sheriff Wendt's training, or that a decision or act by a final policymaker is implicated. Thus, Plaintiff must demonstrate that they were injured because of a pervasive pattern or practice. Besides a discussion of Sheriff Wendt's alleged improper activity, there are no facts to connect either Plaintiffs' Fourteenth or Fourth Amendment violations to any pattern or practice on the County's part. And, although Plaintiffs do indicate the "County established policies, customs, and practices that caused the violation of Plaintiffs' rights under the United States Constitution," (Doc. 4 at 108), they do not indicate how or why, *see Iqbal*, 556 U.S. at 678. Plaintiffs have failed to state a claim against the County and the claims against the County should be dismissed.

## CONCLUSION

Based on the foregoing:

IT IS ORDERED that Defendant Sheriff David Wendt's motion to dismiss (Doc. 8) is DENIED.

IT IS FURTHER ORDERED that Defendant Beaverhead County's motion to dismiss (Doc. 10) is GRANTED.

DATED this 1st day of December, 2023.

Donald W. Molloy, District Judge
United States District Court