Williams Law Firm, P.C.
Nicholas J. Pagnotta, Esq.
Peter B. Ivins, Esq.
235 E. Pine, P.O. Box 9440
Missoula, Montana 59807-9440
(406) 721-4350
nick@wmslaw.com
peter@wmslaw.com
wlfmail@wmslaw.com
*Attorneys for Paul Burt, Ted Caldwell,*
*and Flying J Ranch, LLP*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| CHAD BURTON HILL, | **CV-23-34-BU-DWM** |
| Plaintiff, | |
| -vs- | **DEFENDANTS PAUL BURT, TED CALDWELL AND FLYING J RANCH, LLP'S BRIEF IN SUPPORT OF SUMMARY JUDGMENT** |
| DAVID WENDT, PAUL BURT, TED CALDWELL, FLYING J RANCH, LLP, BEAVERHEAD COUNTY, and DOES 1-10, | |
| Defendants. | |

# TABLE OF CONTENTS

Table of Authorities ................................................................................................. iii

I.      INTRODUCTION ............................................................................................1

II.     UNDISPUTED MATERIAL FACTS ..............................................................3

III.    LEGAL STANDARD........................................................................................9

IV.     ARGUMENT...................................................................................................10

        A.  Plaintiff's claims are barred by res judicata.....................................10

        B.  Plaintiff's claims are barred by the statute of limitations.................14

        C.  Hill's emotional distress claims fail. ................................................16

            1.  There is a lack of evidence of extreme, outrageous conduct to prove
                intentional infliction of emotional distress. ............................16

            2.  There is a lack of evidence of serious and severe emotional distress.......17

        D.  There is no evidence of conspiracy. .................................................17

        E.  There is no evidence of defamation...................................................18

        F.  The Breach of Contract claim lacks evidence and is barred by res judicata........20

V.      Conclusion......................................................................................................21

Certificate of Compliance ........................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................... 10

*Briese v. Montana*,
    2011 WL 338399 (D. Mont. Jan. 31, 2011) ........................................ 15

*Buhl v. Biosearch Medical Products, Inc.*,
    635 F. Supp. 956 (D. Mont. 1985) ...................................................... 15

*Bushman v. Safeway Stores, Inc.*,
    608 F. Supp. 232 (D. Nev. 1985) ................................................... 11, 14

*Chapman v. Maxwell*,
    322 P.3d 1029 (Mont. 2014) ............................................................... 19

*Citizens First National Bank v. Moe Motor Co.*,
    813 P.2d 400 (Mont. 1991) ................................................................. 19

*Czajkowski v. Meyers*,
    172 P.3d 94 (2007) .............................................................................. 16

*Headwaters, Inc. v. United States Forest Service*,
    399 F.3d 1047 (9th Cir. 2005) ................................................. 10, 11, 12

*In re Schimmels*,
    127 F.3d 875 (9th Cir. 1997) .............................................................. 10

*McConkey v. Flathead Electric Cooperative*,
    125 P.3d 1121 (Mont. 2005) ............................................................... 19

*McGowen Precision Barrels, LLC v. Proof Rsch., Inc.*,
    637 F. Supp. 3d 1116 (D. Mont. 2022) ............................................... 15

*Montana Pole & Treating Plant v. I.F. Laucks and Co.*,
    775 F. Supp. 1339 (D. Mont. 1991) .................................................... 15

*Mpoyo v. Litton Electro-Optical Sys.*,
    430 F.3d 985 (9th Cir. 2005) ............................................................ 11, 14

*Much v. Strum, Ruger & Co., Inc.*,
    685 F.2d 444 (9th Cir. 1982) ................................................................... 15

*Much v. Sturm, Ruger & Co., Inc.*,
    502 F. Supp. 743 (D. Mont. 1980) .......................................................... 15

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
    210 F.3d 1099 (9th Cir. 2000) ................................................................. 10

*O'Grady v. United States*,
    144 S. Ct. 379, 217 L. Ed. 2d 204 (2023) ............................................... 16

*Renville v. Fredrickson*,
    101 P.3d 773 (Mont. 2004) ...................................................................... 17

*Schumacker v. Meridian Oil Co.*,
    956 P.2d 1370 (Mont. 1998) ............................................................ 17, 18

*Schurg v. United States of Am.*,
    63 F.4th 826 (9th Cir. 2023) ................................................................... 16

*Schurg v. United States*,
    584 F. Supp. 3d 893 (D. Mont. 2022) ............................................... 16, 17

*Scoggin v. Schrunk,*
    522 F.2d 436 (9th Cir.1975) ................................................................... 11

*Simmons Oil Corp. v. Holly Corp.*,
    852 P.2d 523 (1993) ................................................................................ 18

*Stewart v. U.S. Bancorp*,
    297 F.3d 953 (9th Cir. 2002) ................................................................... 10

**Statutes**

Mont. Code Ann. § 27-2-204 ................................................................. 14, 19

Mont. Code Ann. § 45-9-102 ........................................................................ 7

Mont. Code Ann. § 45-9-110 ........................................................................ 7

**Rules**

Fed. R. Civ. P. 56.......................................................................................... 9

## I.   INTRODUCTION

Plaintiff Chad Hill's claims against Flying J Defendants are retaliation for complaints made about Hill operating a commercial marijuana grow in their small subdivision on Kezia Lane, in Dell, MT. Hill's claims are also retaliation for Flying J Defendants filing a prior lawsuit seeking to enforce restrictive covenants that prohibit commercial activities.

Hill's claims against Flying J Defendants should be dismissed for several reasons. First, Hill's claims are barred by res judicata as all of Hill's claims were or could have been asserted in the first case between Hill and the Flying J Defendants. In the first case, Hill sought additional time from the court for discovery and to amend his complaint specifically to develop the additional legal theories he attempts to assert now. Hill should have asserted those claims before, as he claimed he would. That action went to a bench trial in August 2023 before Judge Burger of the Fifth Judicial District Court, Beaverhead County. Hill did not appeal Judge Burger's Order of Findings of Fact and Conclusions of Law. He should be barred from pursuing claims against the Flying J Defendants that he knew about and could have asserted before.

For similar reasons, Hill's claims against the Flying J Defendants are barred by the statute of limitations. He knew about the claims against these Defendants more than 3 years before he filed this lawsuit on May 26, 2023. Hill wrote a letter in April 2020

that discusses all his allegations and claims against the Flying J Defendants, and the damages they allegedly caused him. His cause of action accrued at that time.

Even if the procedural bars were not fatal, Hill's claims should be dismissed on the merits. Hill's claims rest on alleged statements of Paul Burt about his marijuana business in April 2019. Burt told Defendant Wendt that Hill was operating a marijuana grow operation on his property and there were sketchy people visiting from out of state; but these facts were indisputably true. After Wendt determined that the grow at Hill's property was licensed (through another person), Wendt did not further investigate Hill at his home on Kezia Lane, in Dell. Wendt's subsequent investigation a year later occurred at a different property, in a different town (Lima). The probable cause for the search of this property was not causally related to what Burt told Wendt.

Hill's claim of breach of contract arises out of Flying J Defendants' purported breach of a settlement agreement from the first case between Flying J and Hill. However, no settlement agreement was ever signed, and that case proceeded to trial on the merits. Hill cannot attempt to enforce a settlement agreement from a case that already proceeded to trial. This claim is also barred by res judicata.

There is no evidence of any object, agreement or acts between the Flying J Defendants and Wendt to support Hill's conspiracy claim. This claims likewise fails.

Hill has had his day in Court for his claims against the Flying J Defendants. His claims in this case should have been brought in that case. Nonetheless, Hill's claims are time barred and fail on the merits.

## II.   UNDISPUTED MATERIAL FACTS

Defendants Paul Burt and Ted Caldwell are both retired and partner/owners of Defendant Flying J Ranch, LLP. SUF, ¶ 1. In 2008 they purchased lots and land in the Foxley Manor Subdivision, where they raise alfalfa and occasionally spend time with family and grandchildren. *Id.* Burt and Caldwell own homes next to the home and former commercial marijuana grow operation of Hill, who, in 2014, moved to the small subdivision on Kezia Lane, which is near Dell, MT. SUF, ¶ 2.

Sometime after learning that Hill was operating a commercial marijuana grow, on December 4, 2018, Flying J filed a civil action against Hill for violating the covenants that prohibit operating a business. SUF, ¶ 3. Hill then filed counterclaims against Flying J, including for the alleged trespass of Caldwell and Burt on his property. *Id.*

In April 2019, Defendant David Wendt, then undersheriff of Beaverhead County, temporarily moved into a neighboring home with Bill Briggs, his brother-in-law. SUF, ¶ 4. Also in April 2019, Paul Burt informed Deputy Wendt that Hill had a marijuana grow in his garage on Kezia Lane. SUF, ¶ 5. Burt also informed Wendt that there were "shady looking" characters and that vehicles that visited had out of state plates. *Id.*

Importantly, this is the only complaint, of which Hill is aware, where Burt told Wendt about any of Hill's marijuana operations. *Id.*

After looking into the complaint, Wendt learned there was a licensed grow operation on Hill's property and informed Burt of this. SUF, ¶ 6. Burt then allegedly informed Wendt that there was a homeowner's association in the subdivision that forbid businesses from operating in the subdivision. *Id.* And Flying J had already filed the civil case against Hill for violating the covenants. *Id.*

In the first case between the Flying J Defendants and Hill, the parties attended a mediation on September 26, 2019. SUF, ¶ 7. No settlement agreement was ever signed in that case. *Id.*

According to Deputy Wendt's application for a search warrant, at the beginning of 2020, he observed activity involving Hill at a Quonset style building at 215 East Bailey Street in Lima, MT. SUF, ¶ 8. He observed the windows were covered in black plastic and, through his investigation, learned there was a strong skunk like smell coming from the building. *Id.* His investigation also revealed there was electrical work done for a marijuana grow and 15 to 20 marijuana plants present in the building. *Id.* Through contact with the Montana Medical Marijuana Program, Wendt learned there was no marijuana grow registered at the property in Lima. *Id.*

On April 20, 2020, Defendant Wendt applied for and was granted a search warrant for the house located at 215 Bailey Street, Lima, MT, and a search was executed

the same day. SUF, ¶ 9. Wendt's application for a warrant does not note any evidence or statement from Paul Burt or Ted Caldwell related to a marijuana grow operation at 215 Bailey Street, Lima, MT. *Id.* The search revealed 27 pounds of marijuana at Hill's home in Lima. *Id.* Hill was aware the marijuana was there but claims that he had given this to a Lee Salmonsen, who was living on the property in a Recreational Vehicle. *Id.* It is undisputed that possessing 27 pounds of marijuana would be illegal under either the commercial or personal medical marijuana laws of Montana. *Id.*

There is no evidence that Caldwell or Burt ever knew or informed Wendt that Hill had a marijuana grow at the house on Bailey Street in Lima (where the search was conducted) or that Hill planned to start a grow at that address. SUF, ¶ 10.

A few days after the search warrant was executed on Hill's home on April 20, 2020, Hill wrote a letter to Flying J's attorney in the first case. SUF, ¶ 11 (Hill Letter). Although Hill did not send the letter and does not know the exact date he wrote it, he believes it was written between April 20, 2020, when he received a copy of the application for search warrant, and the end of April 2020. *Id.* He testified he had all of the thoughts about the Flying J Defendants that are expressed in the letter immediately after he received the warrant on April 20, 2020. *Id.* And Hill agrees all the statements in the letter are his own. *Id.*

//

In his letter, Hill made several accusations, including:

a. Asserting that on three occasions Burt and Caldwell and Flying J had rejected settlement offers. SUF, ¶ 12(a).

b. Claiming that Burt and Caldwell had told a number lies in the first case and had cheated and stolen. SUF, ¶ 12(b).

c. Insinuating that Burt or Caldwell informed Wendt about the nature of his marijuana business in Lima, SUF, ¶ 12(c) (although there is no evidence of any statements made by Burt or Caldwell to Wendt about the marijuana business in Lima, *id.*).

d. Insinuating that Burt had told Wendt that Hill was involved in drug dealing and that Burt asked Wendt to arrest Hill, SUF, ¶ 12(c), (there is no evidence that Burt told Wendt that Hill was "drug dealing" or requested he be arrested, *id.*).

e. Claiming that Burt had requested that the prior deputy arrest him for growing marijuana. SUF, ¶ 12(e).

f. Insinuating that there was a conspiracy between Burt, Caldwell, and Wendt because they all attended the same church. SUF, ¶ 12(f).

g. Claiming that Burt and Caldwell's "aggression towards [Hill] cost a great deal of loss in revenue and necessitated a need for me to purchase another location in an effort to settle this dispute. This was not good

enough for them, they have tried to interfere with my potential to operate in a new location. Involving law enforcement opens up several new chapters of liability for them and their associates." SUF, ¶ 12(g). Hill also claimed that Burt and Caldwell were harassing him. *Id.*

On September 11, 2020, Hill was charged with felony criminal production of manufacture of dangerous drugs in violation of M.C.A. § 45-9-110; criminal possession with intent to distribute in violation of M.C.A. § 45-9-110; and criminal possession of dangerous drugs in violation of M.C.A. § 45-9-102. SUF, ¶ 13.

During the remainder of 2020, there was little activity in the first case between Hill and the Flying J Defendants. SUF, ¶ 14. In 2021, Hill retained new counsel, Jack Morris. SUF, ¶ 15. In November 2021, Hill's counsel moved to amend the scheduling order. *Id.* Hill, through counsel, sought additional time to amend his counterclaims asserted against the Flying J Defendants. *Id.* Hill sought "additional discovery and time to determine the sufficiency of the new claims alleged by Hill[.]" *Id.* The new claims were based on the information from the search warrant, including that Burt had informed Wendt that Hill had a marijuana grow on his property on Kezia Lane in Dell (not the property where the search warrant was executed). SUF, ¶ 16. Hill also insinuated the Flying J Defendants had informed Wendt that Hill was moving his marijuana operation to Lima, and that this helped lead to the search. *Id.* Hill asserted he "should be allowed to amend his pleadings in the matter at bar in order to redress the damages suffered as a

result of Flying J's conduct rather than being forced to bring an independent cause of action." SUF, ¶ 17. He claimed that his indictment "was directly related to Flying J's cause of action." *Id.*

On May 17th, 2022, the District Court gave Hill what he wanted, and provided over six months for further discovery and over nine months to seek to amend his counterclaims. SUF, ¶ 18. As part of the additional discovery, Hill, through counsel, deposed Paul Burt and Ted Caldwell on November 28, 2022. SUF, ¶ 19. Burt was asked questions about the claims that he told Wendt about Hill's marijuana business, and that Hill was an interstate drug trafficker. SUF, ¶ 20. Caldwell was asked questions about allegedly informing Wendt that Hill was moving the marijuana business from Kezia Lane to the building in Lima. SUF, ¶ 21 (there is no evidence Caldwell ever said anything about Hill's marijuana grow to Wendt, SUF, ¶¶ 5,10). They were also questioned about the prior mediation and trying to enforce the alleged settlement agreement. SUF, ¶ 20.

After the depositions of Caldwell and Burt in the first case on November 28, 2022, Hill filed this action on May 26, 2023. SUF, ¶ 22. This was more than 3 years after Hill drafted the letter at the end of April 2020, which outlined his complaints about the Flying J Defendants. *Id.*

The case involving Flying J's allegations of violation of the covenants and Hill's counterclaims, including for trespass, went to a bench trial before Judge Berger on August 25, 2023. SUF, ¶ 23. Judge Berger issued his Findings of Fact, Conclusions of

Law, and Order on February 13, 2024. *Id.* Judge Burger enforced the covenants, ruling that Flying J's "claim for Declaratory Injunction to prevent Hill from operating his marijuana growing business in the subdivision is GRANTED." *Id.* The Court also ruled that Hill's "claim for Trespass and Declaratory Judgment allowing him to operate a business are DENIED." *Id.* Hill did not file an appeal of the rulings on his counterclaims in that case. SUF, ¶ 24.

Prior to filing this lawsuit, Hill had experienced depression type symptoms. SUF, ¶ 25. He has had such symptoms since at least the time when he had a breakdown in his relationship with his father, a number of years ago. *Id.* Hill previously saw a counselor who started him on medication, but he requested to be taken off of it. *Id.* Hill has also seen counselors at Tueller Counseling in Rexburg Idaho regarding mental health issues related to this lawsuit. *Id.* However, Hill has not produced any medical records documenting treatment for depression or other mental health issues.

## III.   LEGAL STANDARD

A party is entitled summary judgment on a claim or part of a claim upon showing "no genuine dispute as to any material fact[.]" Fed. R. Civ. P. 56(a). As Flying J Defendants do not bear the ultimate burden of persuasion at trial, it can show that it is entitled to summary judgment in one of two ways:

> [A] moving party without the ultimate burden of persuasion at trial may carry its initial burden of production by either of two methods. The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may

show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

## IV.   ARGUMENT

Each of Plaintiff's five causes of action fails. Hill seeks damages for negligent and intentional infliction of emotional distress, breach of contract, conspiracy, and defamation. All these claims should be barred by the doctrine of res judicata and by the statute of limitations. Moreover, Hill has not set forth evidence to survive the summary judgment stage.

### A.   Plaintiff's claims are barred by res judicata.

Res judicata "provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action[.]" *Headwaters, Inc. v. United States Forest Service*, 399 F.3d 1047, 1051-52 (9th Cir. 2005) (quoting *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997)). Res judicata bars all "claims that were raised or could have been raised in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (citations omitted). Three elements are required to establish res judicata: "(1) an

identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Headwaters, Inc.*, 399 F.3d at 1052 (citations omitted).

A state judgment on the merits serves not only to bar every claim that was raised in state court but, also, to preclude the assertion of every legal theory or ground of recovery that might have been raised in state court supporting the granting of the desired relief. *Bushman v. Safeway Stores, Inc.*, 608 F. Supp. 232, 234 (D. Nev. 1985) (citing *Scoggin v. Schrunk,* 522 F.2d 436, 437 (9th Cir.1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976)). The fact that a different or additional form of relief is requested in the second action does not preclude the application of res judicata. Even where a plaintiff's second lawsuit involves different theories, those theories must have been brought in the original action when they concern the same claim. *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 988 (9th Cir. 2005). Otherwise, "[p]ermitting these later-filed claims to proceed would create incentive for plaintiffs to hold back claims and have a second adjudication." *Id.* at 989.

Here, the first action went to a bench trial and there was a final judgment in the form of findings of fact, conclusions of law and orders from the court. SUF, ¶ 23. A Notice of Entry of Judgment was filed on April 2, 2024, and Hill did not appeal the court's order. SUF, ¶ 24. The parties were the same: Chad Hill, Defendant Flying J Ranch, and its sole owners, Paul Burt and Ted Caldwell. SUF, ¶ 23 (See Findings of

Fact, Conclusions of Law, and Order). The second and third elements of res judicata are therefore satisfied. *Headwaters, Inc.*, 399 F.3d at 1052.

The first element is also satisfied because the claims in this case against Caldwell, Burt, and Flying J Ranch, are substantially the same: a dispute between neighbors that arises out of the Flying J Defendants' attempts to prevent a commercial marijuana grow operation at Hill's property, and Hill's counterclaims asserting that the Flying J Defendants were "harassing" him and causing a great deal of distress. SUF, ¶ 23 (*See* Findings of Fact Conclusions of Law and Order). Hill seeks to use this lawsuit to retaliate for Flying J Defendants using the legal system to try and prevent a commercial grow operation from their neighborhood.[1]

It is also clear that Hill knew about all of his claims in this lawsuit as of April 20, 2020. In the letter he wrote at the end of April 2020, he asserted that Burt or Caldwell informed Wendt about his marijuana business, SUF, ¶ 11(c); that Burt asked Wendt to arrest Hill for drug dealing, *Id.*, ¶ 11(d); that the Flying J Defendants' "aggression towards [Hill] cost a great deal of loss in revenue[,]" *Id.*, ¶ 11(g); and that they "involve[d] law enforcement" which "open[ed] up several new chapters of liability for them[,]" *Id.*, ¶ 11(i); and that their actions "have caused a tremendous amount of mental

---

[1] Although not pertinent to this Motion, the Court may note that Hill, as a prior felon, is not permitted under Montana law to hold a commercial license to grow marijuana.

anguish for me and my girlfriend." *Id.*, ¶ 11(j). These are the same claims Hill asserts in this action. *See* Doc. 4 at ¶¶ 19, 52, 124, 127.

Based on Hill's claims, Hill's attorney sought additional discovery to develop the facts and amend Hill's counterclaims. SUF, ¶ 15. Hill argued for time to develop support for his claims that the actions of the Flying J Defendants led to the charges being filed against him. SUF, ¶ 16. Hill argued he "should be allowed to amend his pleadings in the matter at bar in order to redress the damages suffered as a result of Flying J's conduct rather than being forced to bring an independent cause of action." SUF, ¶ 17. Hill asserted that Flying J Defendants were "attempting to stop Hill from legitimately trying to protect his rights and interests pertaining to this matter now that he is no longer under indictment which *was directly related to Flying J's cause of action*." SUF, ¶ 17 (emphasis added).

Based on Hill's request, the District Court issued a new scheduling order giving Hill over six months for additional discovery and more than nine months to move to amend his complaint. SUF, ¶ 18. Hill then took the depositions of Burt and Caldwell, where he questioned them about making reports to law enforcement about Hill's marijuana business and tried to develop facts to enforce the settlement. SUF, ¶¶ 19-21. With regards to the latter claim that Flying J Defendants breached the settlement agreement, Hill did not file any such motion seeking enforcement. Rather, the first case

proceeded to a bench trial in August 2023, obviating any purported agreement that was reached.

Even if there are some differences between the first case and this case, it is clear that Hill could have raised all of the claims against the Flying J Defendants in the first case, and he even requested additional discovery to do so. *See Bushman v. Safeway Stores, Inc.*, 608 F. Supp. at 234. It matters not that a different or additional form of relief is requested in the second action; this does not preclude the application of res judicata. *Mpoyo*, 430 F.3d 988. Hill should not be rewarded by allowing this case to proceed when he requested and was granted additional time for discovery in the first case to develop and bring all of the claims asserted in this case. "Permitting these later-filed claims to proceed would create incentive for plaintiffs to hold back claims and have a second adjudication." *Mpoyo* at 989. His claims are properly barred by res judicata.

**B.    Plaintiff's claims are barred by the statute of limitations.**

The statute of limitations for "libel, slander, assault, battery, false imprisonment, or seduction is within 2 years." Mont. Code Ann. § 27-2-204(3). Actions based on general torts must be commenced "within 3 years." Mont. Code Ann. § 27-2-204(1). Statutory periods begin "running when all elements of the claim exist or have occurred." Mont. Code Ann. § 27-2-102(1)(a). In Montana, "a right of action in tort accrues upon injury." *McGowen Precision Barrels, LLC v. Proof Rsch., Inc.*, 637 F. Supp. 3d 1116,

1132 (D. Mont. 2022) (citing *Briese v. Montana*, 2011 WL 338399, at *1 (D. Mont. Jan. 31, 2011) (various state tort and § 1983 claims); *Montana Pole & Treating Plant v. I.F. Laucks and Co.*, 775 F. Supp. 1339, 1348 (D. Mont. 1991) (declining to extend continuing tort rationale to negligence, products liability, and breach of warranty claims); *Buhl v. Biosearch Medical Products, Inc.*, 635 F. Supp. 956, 959 (D. Mont. 1985) (rejecting the application of the discovery rule and a theory of continuing tort in a personal injury action); *Much v. Sturm, Ruger & Co., Inc.*, 502 F. Supp. 743, 744 (D. Mont. 1980), *aff'd*, 685 F.2d 444 (9th Cir. 1982)).

Hill was aware of the claims against, and alleged damages caused by, the Flying J Defendants by the end of April 2020. SUF, ¶¶ 11-12. Hill's letter from April 2020 claimed that the Flying J Defendants told lies about him, SUF, ¶ 12(b); informed law enforcement about his marijuana operation, SUF, ¶¶ 12(c)-(e); and, conspired with Wendt against him because they attended the same church, SUF, ¶ 12(f). Hill claimed the Flying J Defendants' "aggression towards [Hill] cost a great deal of loss in revenue[,]" SUF, ¶ 12(g), and they "caused a tremendous amount of mental anguish for me and my girlfriend." SUF, ¶ 12(j). Indeed, in April 2020, Hill claimed Flying J Defendants' actions "open[ed] up several new chapters of liability for them and their associates." SUF, ¶ 12(g). Thus, Hill's claims against Flying J Defendants for Negligent and Intentional Infliction of Emotional Distress (Counts 5 & 6), Conspiracy (Count 8), and Defamation (Count 10) should be dismissed as barred by the statute of limitations.

**C.   Hill's emotional distress claims fail.**

1.   *There is a lack of evidence of extreme, outrageous conduct to prove intentional infliction of emotional distress.*

Hill's intentional infliction of emotional distress claim also fails because there is no evidence of "extreme and outrageous conduct" by the Flying J Defendants. *See Schurg v. United States*, 584 F. Supp. 3d 893, 911 (D. Mont. 2022), *aff'd sub nom. Schurg v. United States of Am.*, 63 F.4th 826 (9th Cir. 2023), *cert. denied sub nom. O'Grady v. United States*, 144 S. Ct. 379, 217 L. Ed. 2d 204 (2023) (citing " *Czajkowski v. Meyers*, 172 P.3d 94, 101 (2007)). "Extreme and outrageous conduct" is conduct that goes "beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Czajkowski*, 172 P.3d at 101.

The gravamen of Hill's allegations are that Burt and Caldwell harassed him by bringing a legal action to enforce restrictive covenants, and that Burt told Wendt, who was temporarily living nearby, that Hill had a marijuana grow and there were shady looking characters around. *See* SUF, ¶¶ 1-6. These allegations were reasonable and legal, as evidenced by the fact that the court in the first case granted Flying J's request to enforce the covenants and bar Hill from operating a commercial marijuana grow, and even Hill acknowledged they had issues with some of the "shady looking" people who were working at the grow. SUF, ¶¶ 5, 23. Hill has not produced evidence that the Flying J Defendants' conduct was extreme and outrageous.

2. *There is a lack of evidence of serious and severe emotional distress.*

A court may grant summary judgment if there is no evidence to support severe or serious emotional distress. *Schurg*, 101 P.3d at 777 (citing *Renville v. Fredrickson*, 101 P.3d 773, 777 (Mont. 2004)). This requires an examination of the intensity and duration of the distress. *Id.* Prior to filing the lawsuit, Hill had experienced depression type symptoms for years, since at least the time when he had a breakdown in his relationship with his father. SUF, ¶ 25. Hill also previously saw a counselor, and has seen a counselor in Rexburg, Idaho regarding issues in this lawsuit. *Id.* However, Hill has not produced any medical records documenting treatment for depression or other mental health issues. *Id.* Hill has not disclosed experts and has not provided material evidence of serious and severe emotional distress to survive summary judgment. *Schurg*, 101 P.3d at 777.

In addition to being barred by the statute of limitations and res judicata, the emotional distress claims lack evidence to survive.

**D.    There is no evidence of conspiracy.**

The elements of a civil conspiracy are "(1) [t]wo or more persons, and for this purpose, a corporation is a person; (2) an object to be accomplished;(3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Schumacker v. Meridian Oil Co.*, 956 P.2d 1370, 1373 (Mont. 1998) (citation omitted). Moreover, it is not the conspiracy itself that gives rise to the cause of action; it is the torts committed or the wrong done in furtherance

of a civil conspiracy that do so. *Id.* (citation omitted). The Montana Supreme Court has held that "[i]if the object of an alleged conspiracy is lawful, and the means used to attain that object are lawful, there can be no civil action for conspiracy. The foregoing is true even though damage may result to the plaintiffs and even though defendants may have acted with a malicious motive." *Simmons Oil Corp. v. Holly Corp.*, 852 P.2d 523, 530 (1993) (citation omitted).

Here, the only evidence of any conspiracy to have Hill arrested and charged is Burt's comments to Wendt about Hill growing marijuana on his property in Dell, MT. SUF, ¶ 5. But this was neither false nor improper. Moreover, it was only after Wendt did an independent investigation a year later in a different town, Lima, at a different property that Wendt developed probable cause to apply for and receive a warrant to search that property. SUF, ¶¶ 8-9. There is no evidence that Burt, Caldwell, or Wendt had any communications about Hill's marijuana in the months before or after the search. SUF, ¶¶ 5, 10. There is no evidence showing a meeting of the minds on a course of action or of any unlawful overt acts taken by Burt, Caldwell, or Wendt.

In addition to being barred by the statute of limitations and res judicata, the conspiracy claim lacks evidence to survive.

### E.   There is no evidence of defamation.

For there to be a cause of action for defamation, defamatory words must be more than unpleasant, annoying, irksome, or hurtful. They "must be of such nature that the

18

court can presume as a matter of law that they will tend to disgrace and degrade [the plaintiff] or cause him to be shunned and avoided." *McConkey v. Flathead Electric Cooperative,* 125 P.3d 1121, 1131 (Mont. 2005) (citation omitted). The Court is charged with determining, as a matter of law, whether the allegedly defamatory statement even if false, is capable of sharing defamatory meaning. *Id.*, ¶ 44. The statute of limitations on a defamation action is 2 years. M.C.A. § 27-2-204. And truth is a complete defense to a defamation action. *Citizens First National Bank v. Moe Motor Co.*, 813 P.2d 400, 404 (Mont. 1991).

Opinions are not defamatory. *Chapman v. Maxwell*, 322 P.3d 1029, 1032 (Mont. 2014) (quoting *McConkey* 125 P.3d at 1131(Mont. 2005) ("A basic principal in the law of defamation is that an expression of opinion generally does not carry a defamatory meaning and is thus not actionable."). Further, comments based on personal observations are generally not actionable. *See Chapman*, ¶ 15.

The only possible defamatory statement identified by Hill occurred when Burt made comments to Wendt in April 2019. SUF, ¶ 5. These included that Hill had a marijuana grow in his garage, that there were "shady looking characters," and visitors with out of state plates. *Id.* Hill agrees that all these statements were true. *Id.*

The only allegedly false statement identified by Hill—that is at issue in this case—is Burt's statement that there were cars coming to his house at all hours of the day. SUF, ¶ 5. As in *Chapman*, this was an opinion based on a personal observation. Further, Burt's

comments to Wendt in April 2019 about Hill's marijuana grow and activities at his house in Dell, MT, did not have any causal relationship with the subsequent investigation in 2020 which led to the search of Hill's property in Lima, MT. Wendt looked into Burt's complaint and determined Hill had a legal grow and informed Burt. SUF, ¶ 6. It was only later that Wendt investigated Hill further, based on independent evidence. SUF, ¶¶ 8-9.

Hill learned about Burt's 2019 statement to Wendt in April 2020, after his property in Lima was searched. SUF, ¶¶ 11-12. The two year statute of limitations for a defamation claim based on Burt's comments to Wendt thus expired in April 2022, and the claim for defamation should be barred for this reason as well.

## F. The Breach of Contract claim lacks evidence and is barred by res judicata.

It is undisputed that the parties never agreed on written settlement terms in the first case, and there was no executed agreement. SUF, ¶ 7. Further, Hill indisputably raised the issue of the purported breach of the settlement agreement in the first case. SUF, ¶¶ 12(a), 15. The court in that case gave Hill an extra six months for discovery and nine months to move to amend his claims to try and prove Hill's claim in that case that Flying J Defendants "acted in bad faith and unilaterally breached the settlement agreement the parties had reached." SUF, ¶ 15. And Hill's attorney asked questions about this in the depositions of Burt, asserting that they were "trying to enforce a settlement agreement in this [first] lawsuit[.]" SUF, ¶ 20. Nonetheless, Hill proceeded to

the bench trial anyways, obviating any purported settlement agreement. SUF, ¶ 23. Hill

has not appealed the judgment from the bench trial. SUF, ¶ 24.

There was no contract between Hill and the Flying J Defendants to breach; if there

had been, this issue should have been raised before Hill went to trial in that case.

## V.    Conclusion

Flying J Defendants are entitled to summary judgment because Hill's claims are

barred by res judicata and the statute of limitations. Moreover, Hill has not provided

admissible evidence to raise a material issue of fact. Flying J Defendants respectfully

request the claims against them be dismissed.

DATED this   7th  day of    August,  2024.

> _____/s/ Peter B. Ivins_____
> Nicholas J. Pagnotta
> Peter B. Ivins
> *Attorneys for Defendants Paul Burt,*
> *Ted Caldwell, and Flying J Ranch, LLP*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing support brief complies with the 6,500-word limit of L.R. 7.1(d)(2)(A), in that it consists of <u>5333</u> words as calculated by Microsoft Word 2016, excluding the parts of the brief exempted by the rule; and with L.R. 1.5(a), in that it is double spaced except for quoted material and footnotes, and typewritten in 14-pt font size.


*/s/ Peter B. Ivins*
Nicholas J. Pagnotta
Peter B. Ivins
*Attorneys for Defendants Paul Burt,*
*Ted Caldwell, and Flying J Ranch, LLP*