IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| CHAD BURTON HILL, | CV 23–34–BU–DWM |
| Plaintiffs, | |
| vs. | OPINION and ORDER |
| PAUL BURT, TED CALDWELL, FLYING J RANCH, LLP, BEAVERHEAD COUNTY SHERIFF DAVID WENDT, and DOES 1-10, | |
| Defendants. | |

On May 26, 2023, Plaintiffs Chad Hill and Louiza Bissette sued Defendants

Paul Burt, Ted Caldwell, Flying J Ranch, LLP (collectively, "Private Defendants"),

and Beaverhead County Sheriff David Wendt,[1] alleging state and federal claims

arising out of an investigation into Hill's marijuana grow operations and

subsequent arrest. (Doc. 1; *see also* Doc. 27 (terminating Defendant Beaverhead

County on a motion to dismiss).) At this point in the proceeding, Hill is the only

remaining plaintiff, (*see* Doc. 35), and he is proceeding pro se, (*see* Docs. 36, 39).

He alleges five causes of action against Private Defendants, (Doc. 4 at ¶¶ 122–53),

---

[1] Wendt is now the Sheriff of Beaverhead County. (Doc. 20 at ¶ 2.) However, "[a]t all times relevant to the issues set forth in this Complaint[,] Wendt was a Sheriff's Deputy of Beaverhead County." (*Id.*) He is referred to as Sheriff Wendt to avoid confusion.

and six causes of action against Sheriff Wendt, (*id.* ¶¶ 100–06, 113– 31, 143–48).

Both Private Defendants and Sheriff Wendt have moved for summary judgment,

(Docs. 51, 54), and filed motions in limine in preparation for trial, (Docs. 60, 62).

For the reasons explained below, both motions for summary judgment are granted,

mooting the motions in limine.  The October 15 jury trial is vacated.

BACKGROUND

The following facts are undisputed unless otherwise noted, (*see* Docs. 53,

55, 66, 67), and viewed in the light most favorable to Hill, *Tolan v. Cotton*, 572

U.S. 650, 657 (2014) (per curiam).

## I.   Factual Background

In 2014, Chad Hill bought real property on Kezia Lane in Dell, Montana,

which is part of a four-lot subdivision in Beaverhead County.  (Doc. 53 at ¶ 2; Doc.

55-1 at 3.)  He moved to the property in 2016.  (Doc. 55-1 at 3.)  Hill divided the

property into two addresses: 77 and 91 Kezia Lane.  (*Id.* at 4; Doc. 55 at ¶ 2.)  Paul

Burt and Ted Caldwell owned two properties in the subdivision, (Doc. 53 at ¶ 2),

and used them to run a ranch, Flying J Ranch, LLP, (*id.* at ¶ 1–2; Doc. 55 at ¶ 3.)

In 2018, Burt and Chadwell filed a civil action against Hill alleging he violated a

restrictive covenant by operating a commercial marijuana grow facility on his

property.  (Doc. 53 at ¶ 3; Doc. 53-1 at 23.)  In April 2019, Sheriff Wendt moved

into a home in the Kezia subdivision.  (Doc. 55 at ¶ 1.)  Soon after, Burt informed

2

Sheriff Wendt that Hill was running a marijuana grow operation on Kezia Lane. (Doc. 53 at ¶ 5.)  That month, Sheriff Wendt obtained information from the Montana Department of Public Health and Human Services that 91 Kezia Lane was a licensed commercial grow operation.  (Doc. 53 at ¶ 6.)

In light of the ongoing litigation with is neighbors on Kezia Lane, Hill purchased property at 215 East Bailey in Lima, Montana, in October or November of 2019.  (Doc. 55-1 at 37.)  In January 2020, Sheriff Wendt began a drug investigation of 215 East Bailey after he noticed Hill's truck outside.  (*See* Doc. 55-5.)  At this time, Lee Salmonsen was living at 215 East Bailey in his RV.  (Doc. 55-3 at 7.)  On April 20, 2020, Sheriff Wendt applied for and was granted a search warrant for 215 E. Bailey that he executed that same day.  (Doc. 53-2; Doc. 55-4; Doc. 73, Ex. 10 (body camera footage)).  The search yielded four marijuana plants that belonged to Salmonsen and 27 pounds of trim.  (Doc. 55-5 at 4; Doc. 74, Ex. 10 at 11:51–12:00.)  On September 11, 2020, Hill and Bissette were charged with four state drug felonies based on the evidence found during this search.  (*See* Doc. 55-5; Doc. 55-1 at 37.)  These charges were dismissed in February 2022.  (Doc. 55-6; Doc. 55-7.)  The bench trial in the state civil case between Hill and his neighbors was conducted in August 2023, and a final judgment in that case was rendered in February 2024.  (Doc. 53-9.)  The state court granted a declaratory injunction in favor of Flying J "to prevent Hill from operating his marijuana

3

growing business in the subdivision," and denied Hill's claims for trespass and declaratory judgment. (*Id.*)

## II.    Procedural Background

Prior to the resolution of the state civil case, on May 26, 2023, Hill and Bissette filed this action against Burt, Caldwell, and Flying J Ranch, LLP (collectively, "Private Defendants") and Sheriff Wendt. (Doc. 1.) He alleges the following five causes of action against Private Defendants: negligent infliction of emotional distress (Count 5), intentional infliction of emotional distress (Count 6), breach of contract (Count 7), conspiracy (Count 8), and defamation (Count 9). (Doc. 4 at ¶¶ 122–53.) He alleges the following causes of action against Sheriff Wendt: Section 1983 liability under the Fourth and Fourteenth Amendments (Count 1), violation of constitutional rights under the Montana Constitution (Count 3), negligence (Count 4), negligent infliction of emotional distress (Count 5), intentional infliction of emotional distress (Count 6), and conspiracy (Count 8). (*Id.* ¶¶ 100–06, 113– 31, 143–48.)

In August 2024, Private Defendants moved for summary judgment on the grounds that all five claims against them are time-barred, barred by res judicata, and/or fail due to lack of evidence sufficient to raise a material issue of fact. (Doc. 51.) Sheriff Wendt also filed a motion for summary judgment, on the grounds that all six claims against him are unsupported or contradicted by the undisputed facts

of the record, and Hill failed to provide sufficient proof of these claims. (Doc. 54.)

Hill's response was limited to a "Response to Statement of Undisputed Fact,"

(Doc. 66), and an "Affidavit for Response of Statement of Undisputed Facts,"

(Doc. 67)—both filed in response to Sheriff Wendt's motion.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A fact is material if it has the potential to

affect the outcome of a case in accordance with governing substantive law.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Id.* Courts must view all the evidence and draw all

justifiable inferences without weighing evidence or making credibility

determinations. *Id.* at 255. "[A] party opposing a properly supported motion for

summary judgment may not rest upon mere allegation or denials of his pleadings,

but must set forth specific facts showing that there is a genuine issue for trial." *Id.*

at 256. Nonetheless, all reasonable inferences must be viewed in the light most

favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir.

2014).

ANALYSIS

The defendants' motions for summary judgment, (Docs. 51, 54), are granted. The breach of contract claim (Count 7) against Private Defendants is precluded by res judicata, and the defamation claim (Count 9) against them is time-barred. Analyzing the remaining claims against both the Private Defendants and Sheriff Wendt, based upon undisputed facts, (*see* Docs. 53, 55, 66, 67), and viewed in the light most favorable to Hill, *Tolan*, 572 U.S. at 657, there is insufficient evidence on the record for any of the claims to survive.  Accordingly, summary judgment is granted in favor of Private Defendants and Sheriff Wendt.  The motions in limine are therefore denied as moot.  (Docs. 60, 62.)

## I.   Procedural Defects

Private Defendants and Sheriff Wendt argue that Hill's failure to properly respond to their motions for summary judgment should be deemed an admission that they are well-taken.  However, "[a] district court may not grant a motion for summary judgment simply because the nonmoving party does not file opposing material, even if the failure to oppose violates a local rule." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir.1993).  Accordingly, this is not a sufficient basis to grant either motion.

## II.   Res Judicata/Claim Preclusion

Private Defendants argue that Hill's claims are barred by the doctrine of res

6

judicata based on the state civil action that was resolved in February 2024. They
are correct, but only as to his breach of contract claim.

Res judicata comprises the doctrines of both claim preclusion and issue
preclusion. *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S.
405, 406 (2020). When a state judgment serves as the basis for preclusion, a
federal court applies the res judicata rules of the state that entered judgment.
*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Here,
Private Defendants have only raised claim preclusion. Claim preclusion bars a
later suit where the previous suit (1) reached a final judgment on the merits, (2)
involved the same parties or their privies, (3) the subject matter of the action is the
same, (4) the issues related to the subject matter are the same, and (5) the
capacities of the person are the same in reference to the subject matter and the
issues between them. *Olympic Coast Inv. Inc. v. Wright*, 105 P.3d 743, 747 (Mont.
2005); *Baltrusch v. Baltrusch*, 130 P.3d 1267, 1273 (Mont. 2006). The third and
fourth requirements are evaluated in tandem. *Weiner v. St. Peter's Health*, 553
P.3d 384, 389 (Mont. 2024). For the purposes of claim preclusion, cases involve
an identity of subject matter and issues if the previous and current claim must
"arise from . . . a common nucleus of operative facts." *Lucky v. Marcel*, 590 U.S.
405, 412 (2020) (internal quotation marks and citations omitted); *Weiner*, 553 P.3d
at 389 (Mont. 2024). Claim preclusion bars "successive litigation of the [] same

7

claim" by the same parties, *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001), but "does not bar claims that are predicated on events that postdate the filing of the initial complaint," *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 600 (2016) (quoting *Morgan v. Covington*, 648 F.3d 172, 178 (3d Cir. 2011)). Thus, the development of new material facts can give rise to a new claim. *Id.* at 599 (citing Restatement (Second) of Judgments § 24, cmt. f (1980)).

On December 4, 2018, Private Defendants sued Hill in state court, alleging "Counts of Injunction, Declaratory Judgment, and Attorney Fees." (Doc. 53-10 at 3.) Hill brought counterclaims "alleging Trespass, Injunction *Pendente Lite*, and Declaratory Judgment." (*Id.*) Private Defendants assert that all the claims against them "in this case . . . are substantially the same [as in the previous case]: a dispute between neighbors that arises out of the Flying J Defendants' attempts to prevent a commercial marijuana grow operation at Hill's property, and Hill's counterclaims asserting that the Flying J Defendants were 'harassing' him and causing a great deal of distress." (Doc. 52 at 12.) They are correct as to Hill's breach of contract claim (Count 7).

### a. Breach of Contract Claim (Count 7)

The previous state civil suit involved the same parties in the same capacities and resulted in a final judgment on the merits. (*See* Doc. 53-10.) The breach of contract claim asserted by Hill in the present case is the "same," in terms of subject

8

matter and issues, *Weiner*, 553 P.3d at 389, insofar as it arose out of the same

occurrences and underlying "nucleus of operative facts" as the breach of contract

claim he could have brought in the previous state civil case, *Lucky*, 590 U.S. at

412. In the state court, Hill argued that he "should be afforded the opportunity to

conduct additional discovery and amend his pleadings . . . based upon the

undisputed fact that Flying J acted in bad faith and unilaterally breached the

settlement agreement the parties had reached." (Doc. 53-5 at 1–2.) Private

Defendants state, and Hill does not dispute, that the state court provided Hill with

an additional "six months for discovery and nine months to move to amend his

claims" to prove the breach of contract allegation. (*See* Doc. 53 at ¶ 18.) He failed

to do so. *See Mills v. Lincoln Cnty.*, 864 P.2d 1265, 1267 (Mont. 1993) ("Res

judicata bars not only issues that were actually litigated, but also those that could

have been litigated in a prior proceeding."). Because the present breach of contract

claim arose from the same occurrences and underlying "common nucleus of

operative facts," as the breach of contract claim Hill could have brought in the

previous state civil case, it is precluded by res judicata. *Lucky*, 590 U.S. at 412.

### b. Remaining Claims (Counts 5, 6, 8, and 9)

Hill's remaining claims against Private Defendants are not precluded by res

judicata. Although the previous state civil suit involved the same parties in the

same capacities and resulted in a final judgment on the merits, (*see* Doc. 53-10),

9

Counts 5, 6, 8, and 9 arise out of a different occurrence and underlying "nucleus of operative facts" than Hill's potential counterclaims in the previous suit, insofar as Hill's current claims are largely based on his criminal investigation and prosecution, which are "events" with "new material facts" that postdate both many of the events associated with the state civil suit. *See Whole Woman's Health*, 579 U.S. at 599, 600. Accordingly, Hill's remaining claims are not precluded.

**III.    Statute of Limitations**

Private Defendants further argue that Hill's emotional distress (Counts 5 and 6), conspiracy (Count 8), and defamation claims (Count 9) are time-barred. Under Montana law, "the period of limitation begins when the claim or cause of action accrues," which occurs "when all elements of the claim or cause exist or have occurred." Mont. Code Ann. § 27-2-102(1)(a), (2). In Montana, the statutory clock does not begin to run until "the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party." § 27-2-102(3). "[F]ederal courts[] applying Montana law[] have consistently held that "a right of action in tort accrues upon injury." *McGowen Precision Barrels, LLC v. Proof Research, Inc.*, 637 F.Supp.3d 1116, 1132 (D. Mont. 2022); *see Buhl v. Biosearch Medical Products, Inc.*, 635 F. Supp. 956, 959 (D. Mont. 1985) (rejecting the application of the discovery rule and a theory of continuing tort in a personal injury action). According to Private Defendants, the

10

accrual date for all Hill's claims is April 2020—the date Hill sent a letter to Private

Defendants' counsel regarding the ongoing state litigation between the parties.

(Doc. 52 at 1–2; Doc. 69 at 2.)  Hill does not address Defendant's time-bar

arguments in his responses.  Ultimately, only Hill's defamation claim is time-

barred.

### a. Defamation (Count 9)

The statute of limitations for defamation is two years.  *See* Mont. Code Ann.

§ 27-2-204(3).  The Amended Complaint alleges that both "Burt and Caldwell

purposefully and knowingly informed law enforcement about [Hill's] grow."

(Doc. 4 at ¶ 150.)  But the record evidence shows that only possibly defamatory

statements were made by Burt to Sheriff Wendt in 2019, (Docs. 55-1 at 25, 38–39,

40–42), and documented in the Search Warrant Affidavit, (Doc. 53-2).  Hill

therefore learned of these statements on April 20, 2020, when the search warrant

was executed.  (Doc. 55-1 at 24, 38–40.)  Thus, this is the date his defamation

claim accrued.  However, Hill filed this Complaint on May 26, 2023, (*see* Doc. 1),

over three years later.  Accordingly, Hill's defamation claim is time-barred.

### b. Remaining Claims (Counts 5, 6, and 8)

The statute of limitations for emotional distress and conspiracy is three

years.  § 27-2-204(1).  Private Defendants argue that Hill knew about all his claims

in April 2020, which is more than three years before this lawsuit was filed.

However, the injuries alleged to have resulted from the negligent and intentional

infliction of emotional distress and conspiracy by Private Defendants largely arises

out of Hill's criminal investigation and prosecution.  It is undisputed that Hill was

charged with drug felonies on September 11, 2020, and these charges were

dismissed on February 9, 2022.  (*See* Doc. 55-7.)  Using either date as the date of

accrual, these claims are not time-barred.

## IV.   Merits

Private Defendants argue that all claims against them fail on the undisputed

record.  Likewise, Sheriff Wendt asserts that all claims against him are

unsupported or contradicted by the undisputed facts of the record, and Hill failed to

provide sufficient proof of his claims.  As indicated above, Hill does not directly

address the facts and legal arguments presented by the defendants.  Nonetheless, in

resolving the present motions, the Court "may consider other materials in the

record."  Fed. R. Civ. P. 56(c)(3).  Ultimately, summary judgment is granted in

favor of Sheriff Wendt and Private Defendants as to each of these remaining

claims.

### a.  Sheriff Wendt – Section 1983 (Count 1)

Hill argues that "Sheriff Wendt, while acting under color of law, deprived

[him] of [his] civil rights under" the equal protection and due process clauses of

the Fourteenth Amendment, and "under the Fourth Amendment to be free from

unreasonable searches, unreasonable seizures, false imprisonment, wrongful conviction, malicious prosecution, and excessive force." (Doc. 4 at ¶ 103.)  Sheriff Wendt asserts that he is entitled to "qualified immunity because there is no evidence showing his affidavit contained statements he knew were false or that he recklessly disregarded the truth." (Doc. 57 at 13.)  Hill does not address Sheriff Wendt's qualified immunity defense in his responses but does argue that Sheriff "Wendt created a warrant by leaving out crucial information and creating a narrative based on his bias against Hill." (Doc. 66 at 4.)  Thus, Hill's fundamental claim challenges the search warrant.[2]  Ultimately, Hill fails to carry his summary judgment burden as it relates to any constitutional claims.

### i.  Fourth Amendment Unreasonable Search

Hill alleges unreasonable search under the Fourth Amendment.  (Doc. 4 at ¶ 103.)  To determine whether Sheriff Wendt violated Hill's Fourth Amendment rights by applying for and executing the search warrant on 215 East Bailey, Hill must present evidence sufficient to raise a genuine issue of material fact showing

---

[2] Neither Hill nor the record as a whole provides evidence supporting his claims of equal protection violations, false imprisonment, or excessive force.  Regarding wrongful conviction, Hill was never convicted, as his criminal charges were dismissed on February 9, 2022.  (Doc. 55-7.)  Regarding malicious prosecution, Hill testified during his deposition that, to his knowledge, Sheriff Wendt did not pressure the prosecutor to bring charges against him, (Doc. 55-1 at 37), and was not involved in the prosecution, (id. at 36).  Hill provides no legal arguments or evidence supporting his claim of malicious prosecution in his pleadings, (Docs. 1, 4, 16, 17), or responses, (Docs. 66, 67).

Sheriff Wendt's deliberate or reckless disregard for the truth in the warrant affidavit, and that but for that dishonesty, the affidavit would not support a finding of probable cause. *See Liston v. Cnty. of Riverside*, 120 F.3d 965, 972 (9th Cir. 1997). For example, in *Liston*, police officers executed a search warrant against a recently sold property when the intended search was based on the previous owner. *Id.* at 968. The new owners asserted that a "large and typical real estate for sale sign had been posted on the lawn for at least ninety days before they moved into their new home." *Id.* at 969 (internal quotation marks and citations omitted). The Ninth Circuit decided the omission of this for-sale sign from the search warrant was a deliberate and material omission because the search warrant "depended *entirely* on the strength of the evidence that [the object of the search] currently resided at the address." *Id.* at 973.

Here, Hill has raised a genuine dispute as to whether certain facts were omitted from Sheriff Wendt's warrant application either deliberately or with reckless disregard for the truth. More specifically, while the warrant application was based on the alleged illegal drug conduct of Hill, Sheriff Wendt was aware that Lee Salmonsen was living at 215 East Bailey at the time of the search, yet the warrant application mentioned neither Salmonsen nor his RV. In his deposition, Devin Keller, then-inspector supervisor at Montana Department of Public Health and Human Services, stated that during the "initial" stages of Sheriff Wendt's

investigation into 215 East Bailey, he provided Keller "with the names of three people he believed to be living [there] and ask[ed] if we have any registered grows" at that address. (Doc. 55-2 at 4.) Keller then expressly clarified that Sheriff Wendt provided him with the name Lee Salmonsen at that time. (*Id.*) Keller also confirmed that both commercial and personal license information for each individual, including Lee Salmonsen, was requested before the search. (*Id.* at 9.) And, Sheriff Wendt's body camera footage shows that when he entered 215 East Bailey, he said to Salmonsen, "how are you? Are you Lee?" (Doc. 74, Ex. 10 at 30–33 seconds.) The omission of Salmonsen and his RV is material because it failed to put the judge signing the search warrant "on notice" that another person, other than Hill, lived on the property. *See Liston*, 120 F.3d at 974. Whether intentional or reckless,[3] Sheriff Wendt omitted the truth—that Lee Salmonsen was residing at 215 East Bailey in his RV.

To proceed with his claim, however, Hill must also show that the search warrant affidavit would not support a finding of probable cause if this omitted information had been included. *See Liston*, 120 F.3d at 972. He fails to do so. Probable cause requires only a "fair probability or substantial chance of criminal activity." *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001).

---

[3] "The question of intent or recklessness is 'a factual determination for the trier of fact.'" *Liston*, 120 F.3d at 974 (quoting *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995)).

The determination of probable cause is based upon the totality of the circumstances known to the officers at the time of the search. *Id.*; *Illinois v. Gates*, 645 U.S. 213, 238 (1983). The search warrant affidavit included statements made by Keller that "there [aren't] any grows [r]egistered in Lima." (Doc. 53-2 at 3.) These statements were confirmed by emails sent between Keller and Sheriff Wendt, which stated that Keller checked for both providers and cardholders cultivating for personal use. (Doc. 73-1.) In the affidavit, Sheriff Wendt included three neighbors' statements of experiencing skunky odors, and an electrician stating that he saw "15 to 20 marijuana plants" while installing "grow lights and fans." (Doc. 53-2 at 2–3). This information still supports a finding of probable cause of potential drug activity at the location even if the warrant had also clarified that Salmonsen was residing on the property in his RV. Accordingly, summary judgment is granted in favor of Sheriff Wendt as to this claim.

### ii. Fourteenth Amendment Due Process

Hill also alleges a due process violation under the Fourteenth Amendment of the U.S. Constitution. (Doc. 4 at ¶¶ 103–06.) The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327,

331 (1986).  The procedural guarantees of the Due Process Clause only apply

when a constitutionally protected liberty or property interest is at stake.  *Ingraham*

*v. Wright*, 430 U.S. 651, 672 (1977).  Liberty interests can arise both from the

Constitution and from state law.  *See Wilkinson v. Austin*, 545 U.S. 209, 221

(2005).  Because Sheriff Wendt has invoked qualified immunity, Hill must present

sufficient evidence to raise a genuine issue of material fact whether Sheriff

Wendt's conduct violated a constitutional right, and his actions were objectively

unreasonable.  *Saucier v. Katz*, 533 U.S. 194, 194–95 (2001), *receded from by*

*Pearson v. Callahan*, 555 U.S. 223, 232–33, 236 (2009) (holding that the *Saucier*

two-step test used to resolve government officials' qualified immunity claims need

not be sequential).

Here, Hill asserts a constitutional interest in being free from malicious

investigation[4] leading to deprivation of liberty.  However, "[f]ederal law clearly

establishes there is no viable legal claim under 42 U.S.C. § 1983 for a law

enforcement officer's inadequate investigation of an alleged crime" as "[p]olice

officers have no affirmative duty to a plaintiff to investigate a crime in a particular

way.  Law enforcement officers' failure to investigate a crime does not rise to the

level of a violation of any constitutional right."  *Marble v. Missoula Cnty.*, 2020

---

[4] Hill expressly identifies "malicious investigation" as distinct from "malicious
prosecution."  (Docs. 4 at ¶ 103, Doc. 16 at 9.)

WL 6043858, at *7 (D. Mont. Oct. 13, 2020) (quoting *Hageman v. Bates*, 2007

WL 927584, at *7 (D. Mont. Mar. 23, 2007)).  "Although [Hill] has a fundamental

right to be free from wrongful conviction, that is the right covered by [a] malicious

prosecution claim." *Id.*  And, to the extent Hill seeks damages for an alleged

discriminatory denial of police services, that claim would be under an equal

protection framework. *See Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir.

2000).  Hill's due process claim against Sheriff Wendt, which is premised on an

inadequate police investigation, fails as a matter of law.[5]  *See Gomez v. Whitney*,

757 F.2d 1005, 1006 (9th Cir. 1985) ("[W]e can find no instance where the courts

have recognized inadequate investigation as sufficient to state a civil rights claim

unless there was another recognized constitutional right involved.").

Because Hill has not presented sufficient evidence of a due process

violation, summary judgment is granted in favor of Sheriff Wendt as to this claim.

### b. Sheriff Wendt – Montana Constitutional Rights (Count 3)

Hill further alleges that Sheriff Wendt's search of 215 East Bailey on April

---

[5] Even if such a cause of action could be pursued, *see Amrine v. Brooks*, 522 F.3d
823, 833 (8th Cir. 2008) (reaffirming the existence of a "substantive due process
cause of action for reckless investigation"), Sheriff Wendt persuasively argues that
mere allegations regarding his investigative conduct is alone insufficient to
establish a claim, *see id.* at 835 (describing instances where recklessness was found
to include where officers: attempted to coerce or threaten the plaintiff, "purposely
ignored evidence" of innocence; or engaged in a systemic effort to implicate the
plaintiff).

20, 2020, violated his constitutional rights under Article II, sections 10 and 11 of the Montana Constitution. (Doc. 4 at ¶¶ 114–17.) Specifically, Hill argues that Sheriff "Wendt violated [his right to] privacy when he unlawfully intruded into [his] property and pursued a frivolous investigation, resulting in Hill [] being . . . charged for unsubstantiated felonious conduct." (Doc. 16 at 22–23.)

> Article II, sections 10 and 11 of the Montana Constitution state:
>
> 10. Right of Privacy. The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.
>
> 11. Searches and Seizures. The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures. No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, or *without probable cause*, supported by oath or affirmation reduced to writing.

Together, these provisions provide a heightened right to privacy, broader than that provided under the Fourth and Fourteenth Amendments of the United States Constitution. *State v. Goetz*, 191 P.3d 489, 494 (Mont. 2008). When analyzing a search and seizure question that specifically implicates the right to privacy under the Montana Constitution, the provisions governing the right of privacy, § 10, and searches and seizures, § 11, are considered in tandem. *State v. Hardaway*, 36 P.3d 900, 909–10 (Mont. 2001).

Here, Hill had a subjective expectation of privacy in the search of 215 East

Bailey, *see Moe v. Butte-Silver Bow Cnty.*, 371 P.3d 415, 420 (Mont. 2016),

meaning the "police conduct constitute[d] a search, subject to constitutional

safeguards," *see State v. Allen*, 241 P.3d 1045, 1057. Therefore, the search must

further a compelling state interest and be constitutionally reasonable. *See id.* at

1057. Under the Montana Constitution, a court assesses the reasonableness of a

search or seizure as a function of whether it occurred pursuant to a valid judicial

warrant, issued on probable cause, and particularly described the area or person to

be searched or seized. *State v. Staker*, 489 P.3d 489, 497–98 (Mont. 2021). A

presumption of reasonableness exists for a search or seizure in such instances. *Id.*

Police investigations of drug operations to protect the public serve a compelling

state interest, and as discussed above, despite the infirmities in the warrant, it was

supported by adequate probable cause and is therefore presumed reasonable.

Accordingly, Hill's state constitutional claims do not survive summary judgment.

### c. Sheriff Wendt – Negligence (Count 4)

Hill alleges that Sheriff Wendt "owed [him] a duty of reasonable care under

state law to act lawfully . . . and Sheriff Wendt [did] not comply with the standard

of care." (Doc. 4 at ¶ 119.) Sheriff Wendt asserts that Hill has failed to prove, and

the record does not demonstrate, "a breach of any duty Wendt owed Hill," (Doc.

57 at 15–16, Doc 72 at 6–7), and that the public duty doctrine bars his negligence

claims. Sheriff Wendt is correct.

In Montana, the "public duty doctrine" is applied "to cases where the plaintiff claims that an officer breached his duty to protect and preserve the peace." *Bassett v. Lamatia*, 417 P.3d 299, 305–06 (Mont. 2018).  But, as the Montana Supreme Court has held, "independent of the duty to protect and based on generally applicable principles of negligence, an officer may owe a legal duty to a person injured directly by the officer's affirmative actions." *Id.* at 311.  "The public-duty doctrine is therefore inapposite and not relevant when . . . the negligence action is premised upon the existence of a duty other than the duty to protect and preserve the peace." *Id.* at 307.  Whether a legal duty exists is a matter of law to be decided by a court. *Fisher v. Swift Transp. Co., Inc.*, 181 P.3d 601, 607 (Mont. 2008).  Hill's negligence claim arises from Sheriff Wendt's actions during a police investigation and presentation of a search warrant affidavit, which were part of his "job and daily duties" as Sheriff.  *Renenger v. State*, 426 P.3d 559, 506 (Mont. 2018); (Doc. 73-2) (police practices expert testimony confirming)).  Since "investigation is a core law enforcement function, a duty owed to an individual under investigation is . . . subsumed under the broader duty to the general public." *Brothers v. Monaco*, 363 F.Supp.3d 1138, 1153 (D. Mont. 2019).  Because the applicable duty here is the general duty to protect and preserve the peace, *see Gatlin-Johnson ex rel. Gatlin v. City of Miles City*, 291 P.3d 1129, 1133 (Mont. 2012), the public duty doctrine applies unless there exists a "special

21

relationship between the police officer and an individual," *Nelson v. Driscoll*, 983

P.2d 972, 978 (Mont. 1999).  There is no evidence of a special relationship.

Accordingly, Sheriff Wendt is entitled to summary judgment on Hill's negligence

claim.

### d. All Defendants – Emotional Distress (Counts 5 and 6)

Hill alleges claims of negligent and intentional infliction of emotion distress

against both Private Defendants and Sheriff Wendt.  The Montana Supreme Court

has held an "independent cause of action for the infliction of emotional distress,"

negligent or intentional, "will arise under circumstances where serious or severe

emotional distress to the plaintiff was the reasonably foreseeable consequence of

the defendant's negligent or intentional act or omission." *Sacco v. High Cntry.*

*Indep. Press, Inc.*, 896 P.2d 411, 418 (Mont. 1995).  With respect to either cause of

action, to reach the foreseeability question, a plaintiff must prove that the

emotional distress was so severe or serious that no reasonable person could be

expected to endure it.  *Id.* at 426 (citing Restatement (Second) of Torts, § 46,

comment j at 77–78).  "It is only where [the emotional distress] is extreme that the

liability arises." *Id.*  "The intensity and the duration of the distress are factors to be

considered in determining its severity." *Id.*  A court "may grant summary

judgment if there is no evidence to support severe or serious emotional distress."

*Schurg v. United States*, 584 F.Supp.3d 893, 913–14 (D. Mont. 2022) (citing

22

*Renville v. Fredrickson*, 101 P.3d 773, 777 (Mont. 2004)).

Private Defendants persuasively argue that Hill has not presented sufficient evidence of "serious or severe" distress. The relevant facts asserted by Hill are limited to his statements that he "sought counseling for severe and continuing depression [and] would be in counseling now if he had the funds to do so," (Doc. 66 at ¶ 16), that the criminal investigation and prosecution "was incredibly stressful," (Doc. 67 at ¶ 9), and that, in 2023, he suffered from "chronic stress overload and degradation of mental health," (*id.* at ¶ 11). But the only evidence he has provided to support these facts are statements made during his deposition, (Doc. 55-1 at 2–4), and Tueller Counseling Services billing statements, (Doc. 55-9). Neither is sufficient.

In his deposition, Hill stated that he has been "[c]asually . . . diagnosed with depression," but that he could not confirm that it was an "official diagnosis." (Doc. 55-1 at 6.) He also stated that "it would be unfair [of him] to pin all the roots of [his] problem on" the conduct of the Private Defendants and Sheriff Wendt, but he explains the depression "has intensified [] to a point where it's become overwhelming" due to this conduct. (*Id.*) The counseling billing statements show that Hill attended counseling sessions on September 17, 2021, October 15, 2021, December 10, 2021, and March 18, 2022. (Doc. 55-9.) However, those counseling records provide no further information regarding Hill's mental state,

23

and he has not provided any medical records or substantive counseling records to support his claim.  He therefore fails to provide sufficient evidence that the emotional distress he allegedly suffered was "so severe or serious that no reasonable person could be expected to endure it."  *Sacco*, 896 P.2d at 426.  The Montana Supreme Court has "declined to hold that a criminal trial on its own supports a claim for emotional distress so severe that a reasonable person could not be expected to endure it."  *White v. State ex rel. Mont. St. Fund*, 305 P.3d 795, 806 (Mont. 2013).

Even evaluated together and viewed in the light most favorable to Hill, *Tolan*, 572 U.S. at 657, Hill's emotional distress claims fail on the merits. Accordingly, Private Defendants and Sheriff Wendt are entitled to a judgment on these claims.

### e.  All Defendants – Conspiracy (Count 8)

Hill asserts that Sheriff Wendt and Private Defendants "intentionally colluded to manufacture a triable case against [him] and deprive [him] of [his] individual rights." (Doc. 4 at ¶ 144.)  However, because there is no evidence of conspiracy in the record, this claim does not survive summary judgment.  In his deposition, Hill was asked if he had "any other evidence that [Sheriff] Wendt acted at the request of Paul Burt to search [his] property or arrest [him]?," to which Hill responded, "I don't think that I do." (Doc. 55-1 at 22.)  Hill was also asked if he

could "think of any other evidence between [Sheriff] Wendt and Paul Burt that might tend to prove collusion between them that resulted in [his] arrest or the search of East Bailey?" (*Id.* at 23.)  Hill responded, "I don't have a mountain of evidence, no." (*Id.*)  During his deposition, Hill was also asked to read paragraph 145 of his Amended Complaint, (Doc. 4), which in relevant part states, "Burt informed Wendt that [Hill] frequently sold marijuana out of [his] home on Kezia Lane, insinuated that [Hill] w[as] selling marijuana illegally, and that [Hill] w[as] illegally growing marijuana at 215 East Bailey. All these statements were false and known to be false by Defendants." (*See* Doc. 55-1 at 24.)  Regarding these allegations, Hill stated, "I personally don't have any knowledge that [Burt] said that we were illegally growing marijuana at 215 East Bailey, but I don't know . . . all the conversations that they had with [Sheriff] Wendt. I just don't' know that they had one." (*Id.*)  Later in the deposition, Hill again affirmed that he did not have evidence to support these specific allegations. (*Id.* at 25.)

After considering all the evidence on the record in the light most favorable to Hill, *Tolan*, 572 U.S. at 657, no reasonable jury could return a verdict for him on the conspiracy claim.  Accordingly, summary judgment is granted in favor of both Private Defendants and Sheriff Wendt on this claim.

## V.  Unpled Claims

In his responsive filings, Hill alleges additional claims that were not

originally plead.  (*See* Docs. 66, 67.)  Because these facts and allegations do not

relate to Hill's pled claims, they are not addressed here.  *See Navajo Nation v. U.S.*

*Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (en banc) (raising an unpled

"claim in a summary judgment motion is insufficient to present the claim to the

district court").

## CONCLUSION

Based on the foregoing, IT IS ORDERED that:

(1) The Private Defendants' motion for summary judgment, (Doc. 51), and

Sheriff Wendt's motion for summary judgment, (Doc. 54), are GRANTED.

(2) The motions in limine, (Docs. 60, 62), are DENIED as MOOT.

(3) The October 7, 2024 final pretrial conference and the October 15, 2024

jury trial and related deadlines are VACATED.

(4)  The Clerk is directed to enter judgment in favor of the defendants and

against the plaintiff and close the case file.

DATED this _1st_ day of October, 2024.

15:23 P.M.

Donald W. Molloy, District Judge
United States District Court